## Carville, Appellant, *v.* A. F. Bornot & Co.

*Workmen's compensation—Officer of corporation—Employee— Salary—Wages—Statutory definitions—Findings of fact—Conclusions of law.*

1. An officer of a corporation who receives a salary may render many kinds of service, even manual service at times, but his status as an officer would remain unchanged; and if he rendered services outside the scope of the duties of his office, those services, in law, would be regarded as gratis and could not be sued for in the absence of a contract.

2. Where a vice-president of a corporation who receives a salary as such, and who owns one-fifth of its stock, is killed, his wife cannot claim that he was doing manual labor at the time of his death while manager of the corporation, and as such was an "employee" or "servant" within the meaning of the Workmen's Compensation Act, where there was no evidence that he was ever employed as a manager, or that there was any contract to pay him wages as a manager or for manual work: Gray v. Gray Printing Co., 87 Pa. Superior Ct. 302, and Eagleson v. Harry G. Preston Co., 265 Pa. 397, distinguished.

3. The Workmen's Compensation Act, by its terms, shows that it was passed for the benefit of the great army of business and industrial wage earners and not for the benefit of salaried executive officers of corporations, and the undefined words used in the statute must be taken in their popular sense, if such sense is not contradictory to the object and intention of the lawmakers.

4. No particular definition is given in the act either of "master" or "servant" so that these words must be taken in the ordinary sense in which they are understood in the law, and which the purpose and general content of the act indicate they are intended to have.

.

5. A corporation, which pays a substantial salary to an executive officer, as its vice-president, who also owns one-fifth of the stock, will not be understood to occupy the position of master over such person as an employee, particularly under a statute where the term "employee" is used as synonymous with "servant."

6. Whether the underlying facts or the evidence concerning such facts brings a case within or excludes it from coming within essential definitions used by the Compensation Act is a question of law, and a determination, one way or the other, of that point, whether stated as an ultimate finding of fact or of law, is reviewable by the courts in its latter aspect.

7. Findings containing mixed questions of fact and law may be reviewed by the courts on their latter aspect alone.

*Workmen's compensation—Sending back record to workmen's compensation board—Question of law—Question of fact—Salaried officers of corporations—Employee.*

8. There is nothing in the Workmen's Compensation Act that requires the court of common pleas, in setting aside the award of the workmen's compensation board, to return the record for further evidence, where the question before the court was one of law and not one of fact.

9. Findings of fact made by the compensation authorities can be excepted to, on appeal to the court, only on the ground that they were unsupported by competent evidence, and this means evidence answering all requirements of the law.

10. Where the question is whether a salaried officer of a corporation is an "employee" or "servant" of the corporation within the meaning of the Workmen's Compensation Act, and there is no competent evidence to support an award based on a weekly wage, the common pleas, in setting aside the award, need not send the record back for further evidence.

Argued November 26, 1926.    Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 304, Jan. T., 1926, by plaintiff, from judgment of C. P. No. 3, Phila. Co., March T., 1926, No. 12,320, setting aside award of Workmen's Compensation Board, in case of Harriet M. Carville v. A. F. Bornot & Co.  Affirmed.

Appeal from decision of Workmen's Compensation Board.  Before FERGUSON, J.

The opinion of the Supreme Court states the facts. Award set aside. Plaintiff appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*W. H. Hepburn, Jr.,* for appellant.—The learned court below erred because no opportunity was given for a further hearing in this proceeding.

Carville was an employee: Gailey v. State Workmen's Ins. Fund, 286 Pa. 311; McCarthy v. Dunlevy-Franklin Co., 277 Pa. 467; Gray v. Printing Co., 87 Pa. Superior Ct. 302; Sotter v. Boiler Works, 257 Pa. 411.

*Felice E. Darkow,* with her *S. S. Herman,* for appellee.—Carville was not an employee within the meaning of the Workmen's Compensation Act: Loan Assn. v. Stonemetz, 29 Pa. 534; Kilpatrick v. Bridge Co., 49 Pa. 118; Brophy v. Brewing Co., 211 Pa. 596; Althouse v. Colliery Co., 227 Pa. 580.

This is not a case where reference back is either proper or necessary: Anderson v. Baxter, 285 Pa. 443; Heck v. Bellevue U. P. Church, 86 Pa. Superior Ct. 77; Callihan v. Montgomery, 272 Pa. 56; Vorbnoff v. Machine Co., 286 Pa. 199.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 3, 1927:

This is an appeal by plaintiff from the order of the court below setting aside an award under the Workmen's Compensation Act.

James G. Carville, plaintiff's husband, died as the result of an explosion which occurred at the cleaning and dyeing works of defendant company. The compensation authorities found that deceased was an employee of defendant within the meaning of the statute; that the accident happened in the course of his employment with defendant company; that deceased "received an average

weekly wage in excess of $20"; and they made the award on that basis.

Carville was originally employed as a dyer, at a weekly wage, by defendant, when it was a partnership and before its incorporation; after the incorporation of the company, he inherited one-fifth of its capital stock, and in 1913 was elected vice-president of the corporation. In 1919 his salary as vice-president was fixed at $7,000, which salary was the only compensation he was receiving at the time of his death in 1925. He drew this salary in irregular weekly amounts, the difference being adjusted at the end of each month. The corporation was more or less of a family affair; deceased was a nephew of the president; another nephew occupied the position of secretary and treasurer, who, at his death, was succeeded by his wife, at a somewhat reduced salary. These men, in addition to performing their executive duties, worked around the plant when occasion required it. The by-laws did not define the duties of the official position occupied by deceased, who made himself generally useful in the affairs of the corporation, usually confining his activities to the dyeing and cleaning department,—in which lines he was an expert,—and, if necessary, taking part in the manual work incident to this branch of the business. At the time of his accidental death, Carville, with the president of the company, was at the factory to investigate a naptha leak, which, apparently, caused the explosion; deceased was telephoning when it occurred.

In its opinion disposing of the case, the court below states: "By the Compensation Act, the term 'employee' is declared to be synonymous with the term 'servant,' and we [see] nothing in the evidence to justify a finding, within the meaning of the act, that decedent could be described as a servant of defendant corporation...... The essential factor is the relationship of decedent to the corporation at the time of his death. The evidence clearly shows that he was a salaried executive officer,

and the compensation paid him was not, in any sense of the words, wages upon a contract of hiring.    An officer of a corporation who receives a salary may render many kinds of service, even manual service at times, but his status as an officer would remain unchanged, and if he rendered services outside the scope of the duties of his office, those services, in law, would be regarded as gratis and could not be sued for in the absence of a contract [Grafner v. Pittsburgh, etc., Ry. Co., 207 Pa. 217, 218; Brophy v. Am. Brewing Co., 211 Pa. 596, 597; Althouse v. Cobaugh Colliery Co., 227 Pa. 580, 582; Wilson v. Brown, 269 Pa. 225, 227].    The president, uncle of decedent, testified that decedent was manager, but there was no corporate provision for a manager and no employment of decedent or wages paid to him as manager.    In point of fact, another officer was formally designated as superintendent of works."

It appears that the compensation board rested its decision, affirming the referee, on Gray v. Gray Printing Co., 87 Pa. Superior Ct. 302, 311; but we agree with the court below that that case does not control this one. In distinguishing the Gray Case, the court below correctly states that it was an instance where four men owned all the stock of the defendant corporation; that these men did not receive compensation as officers of the corporation, but each had his own duties to perform in the conduct of the company and the work in and out of the plant, being authorized to draw $40 a week for the services which he rendered, and, if the business was successful, an additional amount.    Both the court below and the Superior Court adopted the findings of the compensation authorities and decided that, owing to the peculiar character of the organization and the conduct of defendant corporation, there was foundation for the conclusion that these men were acting and receiving wages as employees, rather than as salaried executive officers.    In this connection, the Superior Court calls attention to the fact that some of the men acted in

capacities "clearly in the nature of a servant," which was the position of claimant's deceased husband in that decision; this cannot be said of the deceased husband in the case now before us.

Plaintiff contends that the court below erred in not reaching a similar conclusion to that in the Gray Case, and that its determination that her husband was not an employee drawing wages, or a servant of the defendant corporation, at the time of the accident which caused his death, was wrong. She further contends that, before such decision could be stated by the court below, the Workmen's Compensation Act required it to return the record to the board for a further hearing. On the other hand, defendant contends that the conclusion reached by the court below involved matters of law, and, therefore, it was not obliged to return the record to the board.

Prior to Vorbnoff v. Mesta Machine Co., 286 Pa. 199, our opinions wavered somewhat as to when a record had to be returned by the courts to the compensation board for the taking of further testimony, but in that case, after considering all our earlier decisions and carefully examining the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642, we determined that where, in a hearing before the compensation authorities, one undertook to prove a point material to the decision of the case (par. 14 of Vorbnoff opinion) and the evidence for the purpose lacked legal competency, if, on appeal, this lack was the only reason for reversal, the court, in the words of the statute, had to "remit the record to the board for further hearing and determination" (paragraph 12),— or, in other words, to afford a second opportunity to prove the fact at issue by legally competent evidence; though if the party bearing the burden of proof had entered on no undertaking before the compensation authorities to establish the fact in question, and had offered no evidence whatever for that purpose, the courts were not obliged to give a "further opportunity" so to do

(paragraph 14); nor, on the complaint of one who had failed to obtain a desired finding were they obliged to return the record for further testimony where the evidence originally produced was "merely wanting in persuasiveness or weak in fact" (paragraph 13). We there pointed out that findings of fact made by the compensation authorities could be excepted to on appeal to the courts only on the ground that they were "unsupported by competent evidence" (paragraph 12), and that this meant evidence "answering all requirements of the law" (paragraph 8). In brief, as there stated, "the compensation authorities are to decide all questions of fact and the courts are to decide those of law" (paragraph 9) and "findings" containing "mixed questions of fact and law ......may be reviewed by the courts on [their] latter aspect alone" (paragraph 10). In the case now before us, neither side denied that Carville was in the service of defendant; the question between them was, and is, whether he was in the "employ" of defendant in the sense of being its "servant," within the meaning of that term as used in the Workmen's Compensation Act.

Where an ultimate deduction from facts found by the compensation authorities or recited in the evidence involves a conclusion that either brings a case within or excludes it from coming within essential definitions used by the Compensation Act, no matter in what form the conclusion may be stated, whether as a finding of fact or of law, it is reviewable by the courts in its latter aspect, to see whether or not the underlying findings of fact on which it rests have legally competent evidence to sustain them and, considering the legal meaning of the relevant definitions, warrant the conclusion in question, or whether the evidence itself, when looked at in the light most favorable to appellant, brings the case within the statutory definitions and warrants such a conclusion. Here, the question is whether the evidence shows that the injured person was, at the time of the accident, a servant in the employ of defendant and paid wages as

such, or whether it requires a finding that he occupied the position of a salaried official of the defendant corporation. If the former, he is within the Compensation Act, if the latter, he is not. The solution of the problem depends on the legal meaning of certain parts of the statute, and whether the evidence depended on for the purpose, accepting it as true brings plaintiff's case within the statutory definitions thus involved is a question of law: Flucker v. Carnegie Steel Co., 263 Pa. 113, 118, 119; Callihan v. Montgomery, 272 Pa. 56, 62; Shickley v. P. & R. C. & I. Co., 274 Pa. 360, 361-2.

If from the evidence there can be found, by one desiring only to follow the law and do justice in the case, a series of facts which would show the deceased to have been at the time of his injury a mere employee, or "servant," of defendant, then the award in favor of his dependents ought to be sustained, otherwise not. Viewed from this aspect, we have before us only a question of law, not one of fact, and there is nothing in the statute requiring a return of the record for further evidence. If, however, the ends of justice required a return of the record for that purpose, we should pursue such a course; but we are not so impressed in this case. On the contrary, we agree with the court below that, taking into consideration all the underlying findings of fact which have competent evidence to sustain them, and all the evidence in the case, and giving to both the most favorable consideration for plaintiff, it is plain therefrom that, at the time of the accident, her husband was not in the "employ" of defendant as a "servant" within the meaning of those terms as used in the act (McCarthy v. Dunlevy-Franklin Co., 277 Pa. 467, 471), and that the fixing of his compensation by the referee on a weekly wage basis is entirely without competent evidence to support it. At the time of Carville's death, and for some years prior thereto, he had been an executive officer of defendant corporation at a salary of $7,000 a year, fixed by resolution of the board of directors. The weekly wage

rate stated in the report of the referee does not appear as the result of a contract made before the accident with defendant corporation, or of a mutual understanding between deceased and his company, but was arrived at by an allotment or allocation, out of Carville's $7,000 salary, purely for the purposes of this proceeding.

The Workmen's Compensation Act shows throughout that it was passed for the benefit of the great army of business and industrial wage earners and not to benefit salaried executive officers of corporations, and the undefined words used in the statute must be taken in their "popular sense," if such sense is "not contradictory to the object and intention of the lawmakers": Marsh v. Groner, 258 Pa. 473, 478. Section 103 of the Act of 1915 provides that "the term of 'employer'......is declared to be synonymous with master"; section 104 defines "employee" thus: "The term 'employee'......is declared to be synonymous with servant." No particular definition is given in the act either of "master" or "servant"; so these words must be taken in the ordinary sense in which they are understood in the law, and which the purpose and general content of the act indicates they were intended to have. Ordinarily, a corporation which pays a substantial salary to an executive officer, such as its vice-president, would not be understood to occupy the position of master over such a person, and one in the position of Carville, who, under the by-laws of the company, was to take the place of the president in his absence, and who, individually, owned one-fifth of the stock of the corporation, would not, in common parlance, be understood to occupy the place of an employee, particularly under a statute wherein that term is used as synonymous with servant; the law would not consider such an employer as a master or such an employee as a servant. These terms, master and servant, have a very broad meaning and likewise a very restricted meaning, both in the field of law and of fact, and, in each instance where they are used in a statute, it becomes

necessary to ascertain from the act itself what meaning must be given to them. In the present case, it is only necessary to say that, under the statute now before us, the term "master" was not intended to cover a corporation paying a substantial salary to an executive officer, or the terms "employee" and "servant," one occupying the position which Carville did in the organization of the defendant corporation. That is all it is necessary to decide, for this is not the case of an ordinary employee, on wages, being used pro forma as an executive officer of defendant company, nor is it the case of one with the title of an executive officer but really serving as an ordinary employee and receiving a fixed or ascertainable compensation for his work as such. We will decide whether those cases are within the Compensation Act when they come to us.

In Eagleson v. Harry G. Preston Co., 265 Pa. 397, 398-9, where a traveling salesman who worked on a "weekly wage," and who was also a director of his corporate employer, but received no salary or other income as such, was killed in the course of his employment, we affirmed an award in favor of his widow under the Workmen's Compensation Act, saying that there was nothing in the statutory definition of "employee," which deprived claimant of the benefits of the compensation system "simply because her husband, a salesman in defendant's employ, happens to be named as one of its directors"; and we there said, "This is not the case of a higher executive officer of a corporation claiming an award under the Compensation Act," adding, "that point will be met and decided when we come to it." It is plain to be seen that the Eagleson Case does not rule the case before us.

The judgment of the court below is affirmed.