Nirenstein v. Colang, Inc. et al., Appellants.

Argued October 23, 1933.

Before Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*James A. Montgomery, Jr.,* and with him *Layton M. Schoch,* for appellant.

*Alexander N. Rubin* of *Hirschwald, Goff & Rubin,* for appellee.

OPINION BY KELLER, J., December 16, 1933:

This is a workmen's compensation case. A statement of facts was agreed upon between the employer, employe and insurance carrier, and given to the referee, of which the following are pertinent on this appeal:

"1. The defendant employer, Camp Colang, Inc., is a New York Corporation engaged in business in the State of Pennsylvania, operating a camp for girls during the months of July and August at Westcolang Park, Pike County, Pennsylvania. This camp employs camp directors, counsellors, cooks, etc.

"2. Camp Colang, Inc., has no business other than the maintenance and operation of the said camp.

"3. At all times hereinafter mentioned the claimant and petitioner, Frances D. Nirenstein, was and is a vice-president of Camp Colang, Inc., and by agreement with Camp Colang, Inc., was and is entitled to a salary of $50 a week during the time that she was actually performing the duties of such office.

"5. The duties of the claimant as vice-president of the said corporation were the acceptance of applications from campers; the personal employment of camp counsellors and directors; to be present at the camp during the entire season so that complaints and inquiries by campers or counsellors could be passed upon by her and to authorize proposed expenditures to be made on behalf of Camp Colang, Inc.

"7. On the 19th day of June, 1929, the claimant was riding as a passenger in a Chevrolet Coach, registered in the name of and owned by Camp Colang, Inc., and driven by [its employee].

"8. The claimant was on her way to Camp Colang, Inc., from New York City at the time referred to in the preceding paragraph.

"9. The claimant had been at Camp Colang, Inc., during the month of May and the earlier part of

June and had left in the earlier part of June for New York City to attend to her duties, which duties were to, and did take her about a week, as vice-president, in the City of New York, and was returning to the camp to resume her duties as such at the camp, at the time mentioned in the two preceding paragraphs, expecting to remain at the camp from that day continuously until the end of the camp season.

"10. On the said day the said Chevrolet Coach was proceeding by a direct route from New York City to Westcolang Park, Pennsylvania, and was traveling in or about Goshen, New York.

"12. During the negligent and unlawful driving by the operator, ...... the car left the road and struck a ditch and post, severely and critically injuring Frances D. Nirenstein ......

"16. Camp Colang, has three directors, Herman Margulis, Dora Aptakin and Frances D. Nirenstein, the claimant. The duties of Mr. Margulis were to supervise the various courses and private instruction given to the girls at the camp and to have general charge of all the ethical problems. The duties of Aptakin were to supervise the diet of the children, to take charge of the cooks, the waiters and so forth, and to see that the various children were properly fed in accordance with medical advice which was given at the camp. Claimant's duties are set forth in the already agreed upon statement of facts.

"17. The three directors aforesaid are the only shareholders of Camp Colang, Inc., and all have oral contracts of employment with Camp Colang. Camp Colang, Inc., has two hundred shares, no par value stock, one hundred being issued in equal proportions or almost equal."

The referee awarded the claimant compensation. The Workmen's Compensation Board reversed the referee and set aside the award. The court below sus-

tained the appeal and awarded compensation. After full consideration of the case we are of the opinion that the Workmen's Compensation Board correctly decided the case and that the lower court erred in sustaining the exceptions and entering judgment for the claimant.

The decision of the case depends on whether it is governed by Carville v. Bornot, 288 Pa. 104, 135 Atl. 652, or Gray v. Gray Printing Co., 87 Pa. Superior Ct. 302. In the former case, Carville was vice-president of the corporation, owning one-fifth of its capital stock. His salary was fixed at $7,000 a year, which was the only compensation he was receiving at the time of his death. He drew the salary in irregular weekly amounts, the difference being adjusted at the end of each month. In addition to performing his executive duties, he worked around the plant when occasion required it. The by-laws did not define the duties of the official position occupied by deceased, who made himself generally useful in the affairs of the corporation, usually confining his activities to the dyeing and cleaning department, but taking part in the manual work incident to this branch of the business. At the time of his accidental death, Carville, together with the president of the company, was at the factory to investigate a naphtha leak which apparently caused the explosion resulting in his death. The Supreme Court, speaking through Chief Justice MOSCHZISKER, said, inter alia: ''The question is whether the evidence shows that the injured person was, at the time of the accident, a servant in the employ of defendant and paid wages as such, or whether it requires a finding that he occupied the position of a salaried official of the defendant corporation. If the former, he is within the Compensation Act, if the latter he is not ........ Ordinarily, a corporation which pays a substantial salary to an executive officer, such

as its vice-president, would not be understood to occupy the position of master over such a person, and one in the position of Carville, who, under the by-laws of the company, was to take the place of the president in his absence, and who, individually, owned one-fifth of the stock of the corporation, would not, in common parlance, be understood to occupy the place of an employee, particularly under a statute wherein that term is used as synonymous with servant; the law would not consider such an employer as a master, or such an employee as a servant. These terms, master and servant, have a very broad meaning and likewise a very restricted meaning, both in the field of law and of fact, and, in each instance where they are used in a statute, it becomes necessary to ascertain from the act itself what meaning must be given to them. In the present case, it is only necessary to say that, under the statute now before us, the term 'master' was not intended to cover a corporation paying a substantial salary to an executive officer, or the terms 'employee' and 'servant,' one occupying the position which Carville did in the organization of the defendant corporation. That is all it is necessary to decide, for this is not the case of an ordinary employee, on wages, being used pro forma as an executive officer of defendant company, nor is it the case of one with the title of an executive officer but really serving as an ordinary employee and receiving a fixed or ascertainable compensation for his work as such.''

In the case of Gray v. Gray Printing Co. the situation was the converse of the Carville v. Bornot case. There the corporation was owned by four members each holding one-fourth of the stock. Gray was president of the company. None of the officers of the corporation received any salary by virtue of his office, but a salary was paid to each of them for work actually done for the corporation along lines that would have

been performed by employees, the said Gray acting as a reporter. That case went to the extreme limit in behalf of the claimant, but the claim was sustained because none of the officials of the company drew salaries as such, but were paid compensation for their labor; whereas in the Carville v. Bornot case, each of the officers received a salary for the duties incident to the office, and whatever additional services were performed were rendered without compensation. The Gray case is nearer in its facts to the case of Eagleson v. Harry G. Preston Co., 265 Pa. 397, 109 Atl. 154, where a salesman of the corporation, on a weekly wage, who was also a director of the corporation, but who received no salary, wages or income by reason of such office, was held to be an employee within the purview of the Workmen's Compensation Act. Both it and the Gray case were distinguished in the opinion in the Carville v. Bornot case, on the ground that in neither of them did the officer receive any salary or income by reason of such office, but only as compensation for his service as an employee.

We agree with the court below that the facts came before the referee and the board in an unsatisfactory form; but that does not warrant us in disregarding the 'agreed statement of facts'; which, in effect, was what the court below did.

The third and fifth paragraphs of the agreed statement of facts furnish a list of the claimant's duties as vice-president and aver that by agreement she received a salary of $50 a week while she was performing the duties of that office; and the ninth paragraph states that when she was in New York she was attending to her duties as vice-president there, and when she was hurt she was returning to the camp to resume her duties as such [vice-president] at the camp. Her duties at the camp were detailed in paragraph five as

constituting her duties as vice-president, for performing the duties of which office under paragraph three, she received her salary.

The court below practically disregarded these agreed facts, because the statement did not set forth the by-law regulating the vice-president's duties. There may have been none. There was not in the Carville v. Bornot case. It is not necessary that there should be. If the only persons interested in the corporation agreed what those duties are, that is enough. The facts remain that the claimant is one of the three owners of the corporation defendant, and its vice-president; that by agreement with her co-owners in the corporation she receives the substantial salary of $50 a week while performing the duties of the office of vice-president; that the duties pertaining to her office as vice-president are set forth in detail in paragraph five of the agreed statement of facts; that some of those duties she had been performing in New York City, and when hurt, was on her way back to the camp to perform such of said duties as pertained to her office of vice-president there. She was not an ordinary employee, on wages, being used pro forma as an executive officer; nor was she one with the title of an executive officer, but really serving as an ordinary employee, and receiving a fixed or ascertainable compensation for her work as such. Claimant was rather an executive officer of the corporation, who received a salary for performing the duties pertaining to that office; not a mere employee within the meaning of the statute, because as incidental to her office she may have done work which otherwise would have been performed by an employee. So did Carville. We are of opinion that claimant received her salary as an executive officer, rather than as an employee, and hence comes within the ruling of Carville v. Bornot, supra, and is not entitled to workmen's compensation.

The assignments of error are sustained, the judgment is reversed; the order of the Workmen's Compensation Board is reinstated, and the petition for compensation is dismissed.