## Cox v. Hoopes Brothers & Thomas Company et al.

*Samuel Lichtenfeld*, for claimant.

*J. P. McElree*, for defendants.

HARVEY, J., January 20, 1936. — In this compensation case, the referee found the facts to be that the claimant, on October 13, 1934, was employed as a nurseryman by the defendant, which was engaged in the conduct of a nursery, growing trees, shrubs and flowers; and that the claimant's particular employment at the time of his injury, when he was struck in the eye by a branch of a plant, was the performance of his duties in digging shrubbery. The referee concluded, as matter of law, that the claimant was then engaged in agriculture within the meaning of the Act of June 3, 1915, P. L. 777, a supplement to The Workmen's Compensation Act of June 2, 1915, P. L. 736, disallowed compensation and dismissed the petition. The Workmen's Compensation Board affirmed the findings of fact, conclusions of law and order of the referee, and dismissed the claimant's appeal therefrom. The matter is before us on appeal from the decision of the board.

There was sufficient competent evidence to sustain the findings of fact of the referee, and the sole question raised

by the exceptions on this appeal is one of law, whether the claimant, at the time of his injury, was an agricultural worker, that is, a person engaged in agriculture, within the meaning of the supplementary Act of 1915, supra. This act exempts, from the provisions of The Workmen's Compensation Act of 1915, "agricultural workers": Matis et al. v. Schaeffer, 270 Pa. 141; that is, persons who, at the time of the injury, are engaged in "agriculture".

"Agriculture as defined by Webster is the 'art or science of cultivating the ground, especially in fields or in large quantities, including the preparation of the soil, planting of seeds, the raising and harvesting of crops and the rearing, feeding and management of livestock' ": Bucher v. American Fruit Growers Co., 107 Pa. Superior Ct. 399, 403.

In Webster's New International Dictionary (2d ed.), this definition continues as follows: "tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise. In this broad use it includes farming, horticulture, forestry, dairying, sugar making, etc."

The opinion in the Bucher case, supra, also states at page 403:

"In Funk & Wagnall's dictionary agriculture is defined as 'a science that treats of the cultivation of the soil,' and under this definition it is stated 'agriculture as a generic term includes at once the science or art and process of supplying human wants by raising products of the soil and by associated industries' ".

It thus appears that in the dictionary definitions agriculture is given the generic and broad sense, which includes not only the more circumscribed and limited sense of cultivating the ground, especially in fields or in large quantities: see Springer v. Lewis, 22 Pa. 191; the preparation of the soil, the planting of seeds, the raising and

harvesting of crops, such as grain or fruit (that is crops cut or gathered in a single field, or of a single kind, or in a single season or part of a season), and the rearing, feeding and management of livestock, but includes also "the production of plants and animals useful to man", and "supplying human wants by raising products of the soil and by associated industries".

In the horticultural sense, a nursery is "a place where trees, shrubs, vines, etc. are propagated for transplanting or for use as stocks for grafting; a plantation of young trees or other plants": Webster's New International Dictionary (2d ed.); see 46 C. J. 836. This is a branch of horticulture, and horticulture is defined as "the department of the science of agriculture which relates to the cultivation of gardens or orchards, including the care of vegetables, fruit, flowers, and ornamental shrubs and trees": Bucher v. American Fruit Growers Co., supra, at page 404. It inevitably follows, the conduct of a nursery being a division of horticulture and the latter being a division of agriculture, that the conduct of a nursery is a subdivision of agriculture. "If it is correct that horticulture is one department of agriculture, then agriculture must include horticulture": Bucher v. American Fruit Growers Co., supra, at page 404.

But, as we view it, the operation of a horticultural nursery is agriculture within the generic and broad sense of that word, as defined by the dictionary, but it is not agriculture within the more circumscribed and limited sense of that word, as thus defined. In other words, the propagation of trees and plants for transplanting or for use as stocks is within the scope of "the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use and their disposal by marketing or otherwise", and "supplying human wants by raising products of the soil and by associated industries", but it is not within the scope of "cultivating the ground, especially in fields or in large quantities, including the preparation of the soil, planting of seeds, the raising and harvesting of crops and the rear-

ing, feeding and management of livestock". In common parlance and, therefore, in the usual and commonly accepted use of both terms, "agriculture" and "nursery", the former does not include the latter, nor does "agricultural worker" include a "nurseryman". In this agricultural community, at least, there can be no doubt that, in the popular meaning, one is engaged in agriculture when his principal occupation is tilling the soil and raising crops. Whatever else may be incidental, the criterion is the cultivation of the soil and the harvesting of seasonal products. Such an one usually rears, feeds, and obtains the natural products of livestock, and if the dairy becomes the principal factor of his produce he becomes a "dairy farmer". In other words, the popular meaning confines "agriculture", insofar as concerns a horticultural nursery, to its more limited meaning.

If all this be so, we reach the crux of the matter: In what sense did the legislature use the words "agriculture", in the body of the supplementary Act of 1915, and "agricultural workers", in the title thereof? Did it use "agriculture" in the popular and limited sense, or in the generic and broad sense?

Undefined words used in The Workmen's Compensation Act must be taken in their popular sense, if such sense is not contradictory to the object and intention of the lawmakers: Carville v. A. F. Bornot & Co., 288 Pa. 104, 112. The act "was passed for the benefit of the great army of business and industrial wage earners": ibid. The act is remedial, and it is the duty of the courts to construe it liberally, having in mind the benevolent and humanitarian purposes of its enactment: Manley v. Lycoming Motors Corp., etc., 83 Pa. Superior Ct. 173.

We are of opinion that the legislature used the word "agriculture" in its popular and limited sense and that such sense, in relation to a nurseryman, is not contradictory to the object and intention of the lawmakers, in view of the benevolent and humanitarian purposes of The Workmen's Compensation Act.

Briefly, the objects and purposes of The Workmen's Compensation Act were to remedy the results of modern industrial development, conditions requiring the coöperation of many employes and the extensive use of powerful and dangerous mechanical appliances and machinery, leaving injured employes without adequate or certain relief under common-law actions, and thereunder, generally speaking, imposing the burden of the economic loss on the employes. The remedy was to establish in law a system which would tend to give the employe a more equitable, inexpensive, speedy, and certain relief, and to shift the burden from the employe to be absorbed by the proceeds of the industry. The purpose of the act is "to relieve to some extent the employee who has been injured in the course of his employment from the economic consequences of his injury and make them a part of the cost of operation of the business, to be paid ultimately by the consuming public, and it should be so construed as to carry this purpose into effect": Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454, 462.

Those whose occupation most surely falls within the popular and limited sense of "agriculture", and who are of the most ancient class of direct producers, are those tillers of the soil commonly known as farmers and farm hands. "Agriculture" in its limited sense is practically still in the era of the small shops, few unit employes and simple machinery. "Agriculture" alone, in this limited sense, would probably never have given rise to the conception of workmen's compensation. The very nature of the occupation of the tillers of the soil, where the employer and the employed in the majority of the units are manual laborers with each other, and where the employes are few in number, and where it is not so clearly indicated that the economic loss by injury to the employed should be absorbed by the business, and where the employed are not subjected to the ever-present risks of injury concomitant with the use of vast and complicated machinery, and other similar considerations, must have given rise in the

minds of the lawmakers to the distinction in applying workmen's compensation principles between this class of workers and business and industrial workers, and that distinction was recognized by the exception of agricultural workers from the provisions of The Workmen's Compensation Act.

We do not intend to say that the legislature, by "agriculture", meant solely the so-called farmer and farm hand, as we have referred to them, but we believe that, having them principally in mind, the lawmakers used the term in its popular and limited sense.

It follows that the popular meaning of "agriculture" and "agricultural workers", which excludes nurserymen, is not contradictory to the object and intention of the legislature in enacting that law; but, on the contrary, is consistent with an intention of the lawmakers to protect all workers except those who are engaged in agriculture in its limited sense.

Nor do we find a conclusion predicated on this reasoning to be inconsistent with or contradictory to the Bucher case, supra, upon which the defendant strongly relies. That case, as we view it, rules, in effect, that the legislature used the words "agricultural workers" and the phrase "engaged in agriculture" in their popular sense, that fruit growing, in the circumstances there present, is a branch of horticulture, which is a department of agriculture, and that "in common parlance it is unquestioned that agriculture would be considered as including fruit growing". We believe we follow the same avenue, but we find at the end thereof that "in common parlance" agriculture would not be considered as including the growing of trees, shrubs, and flowers in a nursery.

The Bucher case is not analogous on its facts to, and may be distinguished from, the instant case, just as it was in the case of Hein v. Ludwig, 118 Pa. Superior Ct. 152, 157, where it is said:

"The case is distinguishable from the case at bar as the growing of fruit under natural conditions in orchards

on a farm comes within the term 'agriculture,' as clearly as the raising of grain and the growing of vegetables under similar conditions constitute agricultural pursuits".

The instant case is more in the line represented by the Hein case, supra, in that "agriculture, in the usual and commonly accepted sense of the term, does not include the operation" of a horticultural nursery, and "such an enterprise is not one of those agricultural activities consisting of, or directly related to, the cultivation of the ground, in the sense of husbandry": idem, at page 156.

We hold therefore, that the claimant, being engaged as a nurseryman at the time of the injury, was not then engaged in agriculture, nor was he then an agricultural worker, within the meaning of the supplementary Act of June 3, 1915, P. L. 777, excepting agricultural workers from the provisions of The Workmen's Compensation Act.

Reversing the compensation board on a question of law ordinarily requires no remitting of the record for further findings, but here the referee made no award, nor did he determine whether the injury was sustained in the circumstances by accident in the course of employment, and the record must be returned for the determination of relevant facts and an allowance of an award in claimant's favor, if he otherwise be entitled, in accordance with this opinion. In view of the provisions of the Act of July 18, 1935, P. L. 1316, amending the supplementary Act of 1915, supra, and approved after the order of the referee and prior to the decision of the compensation board, it should be found as a fact whether or not the defendant, prior to the injury of the claimant, made an election as therein provided for.

### Decree

And now, January 20, 1936, the exceptions are sustained, the decision of the Workmen's Compensation Board is reversed and the record is remitted to the board for further hearing and determination, in accordance with this opinion.