509 A.2d 905

John Rightley, trading as John's Auto Body Shop, Petitioner *v.* Workmen's Compensation Appeal Board (Muccigrosso), Respondents.

Submitted on briefs April 8, 1986, to Judges ROGERS and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

· *Samuel S. Blank*, for petitioner.

*Donald Applestein*, for respondent, Anthony Muccigrosso.

OPINION BY JUDGE ROGERS, May 16, 1986:

This is the appeal of John Rightley (employer) from a decision of the Pennsylvania Workmen's Compensation Appeal Board (board) affirming the referee's award of benefits to Anthony Muccigrosso, a claimant.

The claimant has been employed as an auto body repairman since 1950. He was hired to do that work by the employer in 1976 or 1977. While so employed, he was exposed to inhalants from the painting shop as well as airborne particles from the sanding, grinding and filling of auto body parts. On March 4, 1982, while at work, the claimant suffered an episode of intense coughing and a shortness of breath. He was taken to Taylor Hospital where he was admitted to the intensive care unit, with impending respiratory failure. After eleven days of hospitalization, the claimant was re-

leased, but remained under the care of his physician, Jeffrey T. Darnall, M.D. The claimant was hospitalized again in October and December of 1982 for respiratory problems. He was diagnosed by his physician as having chronic obstructive lung disease and asthma. On the advice of his physician, the claimant has not returned to his work for the employer.

The claimant filed a claim petition on May 14, 1982. The employer filed an answer to the claim petition denying that the claimant was an employee, alleging that the claimant was a partner in his wheel alignment business, and denying that the claimant became disabled as a result of his employment.

A hearing was held before a referee who made the following pertinent findings of fact:

3. From the time Claimant began his employment with the Defendant Employer until he left because of illness in March, 1982, Claimant's work was supervised by Defendant Employer which included, but was not limited to telling Claimant when to report to work, on what vehicles to work, and what to do on each.

4. From the time Claimant began his employment with Defendant Employer until he left because of illness in March, 1982, he was paid the following gross annual wages as reflected on the W-2 forms supplied Claimant by Defendant Employer: 1977—$12,240.00; 1978—$12,480-.00; 1979—$12,000.00; 1980—$12,480.00; 1981—$12,480.00; 1982—$3,120.00.

5. During the years 1979, 1980, 1981, and 1982 Defendant Employer admits he failed to maintain Worker's Compensation Insurance or any approved program of self-insurance as required by law.

6. I find the testimony of the Defendant Employer lacking credibility because is [sic] lacks consistency and candor. For example, Defendant Employer maintains that he like [sic] 'to check what is going on' in his business. Yet he did not know if the $2,000.00 he had given to Claimant was a loan or not, nor did Defendant Employer bother to review the books of an alleged partnership he supposedly had with Claimant for a period exceeding two years. Defendant Employer admits that during the pertinent time, he just signed all the checks given him without reviewing them, allowed his Workers' Compensation Insurance to lapse and indeed, asserted it was his bookkeeper's fault. Defendant Employer's testimony was also contradictory in that he testified that Claimant was his partner but also worked by himself and that the wage statement W-2 forms were issued by mistake, yet he issued the 1982 W-2 form *after* he was aware of the supposed mistake was drawn to his attention. Finally, Defendant Employer testified that Claimant did not work for him (presumably because of the alleged 'partnership') yet he paid Claimant $400.00 per week for frame work which was separate from the $240.00 per week he 'mistakenly' paid him during the years 1979, 1980, 1981, and 1982. Defendant Employer would have us believe he paid Claimant over $30,000.00 a year ($20,000.00 a year from the $400 a week plus over $12,000.00 reflected on the various W-2 forms) for almost four (4) years by mistake. These are not the acts of a man who likes to 'keep on top of things' in his business.

7. Sometime in late 1979 Claimant and Defendant Employer entered into an 'additional

relationship. Pursuant to this relationship, Claimant and Defendant Employer opened a joint bank accound [sic] which was completely funded with Claimant's money ($4,000.00), and which was used to purchase auto frame straightening equipment most of which was stored in Defendant Employer's garage. There was no advertising of this business venture, no telephone number issued, to tax returns (informational or otherwise) filed, and no partnership agreement negotiated and executed. Based on the foregoing, I find that there was no partnership or in the alternative, if there was, it was in addition to the already existing employer-employee relationship between Claimant and Defendant Employer within the meaning of the Act.

8. During the winter of 1981-82 Claimant experienced a greater number of colds and coughs than normal. He also found that when he experienced period [sic] of shortness of breath if he left the auto body shop, the symptoms would lessen.

. . . .

11. From February, 1981 to the present, Claimant had been under the care and medical supervision of Jeffrey T. Darnall, M.D. whom I find to be an expert by training, education and experience in the area of immunology. I find Dr. Darnall's testimony credible because of its consistency and thoroughness. Accordingly I find as a fact that Claimant suffers from chronic obstructive lung disease and in particular, from asthma. *Also, I find that Claimant is subject to asthmatic attacks and that those attacks are caused or 'triggered' by the inhalants in the atmosphere of*

*the Defendant Employer's auto body shop.* I further find that Claimant's subsequent hospitalizations in October and December, 1982 were a result of this asthmatic condition and Claimant's emotional concerns arising from his physical condition and, in part, from his concern arising from the fact that Defendant Employer had failed to maintain Worker's Compensation Insurance, and the financial problems his family was facing because of that. This is well documented by Claimant's exceedingly high IGE levels after the March, 1982 hospitalization [sic] (emphasis added).

12. While also find [sic] Theodore Rodman, M.D. an expert in the field of immunology and respiratory disease, I find Dr. Rodman's testimony of limited value because he did not examine Claimant until eleven (11) months after Claimant's March, 1982 hospitalization, and because Dr. Rodman was not Claimant's attending physician. Indeed, Dr. Rodman testified that the apparent difference in his test results from those of the tests taken about the time of the Claimant's first hospitalization may well have arisen because of the 11 months interval between the tests. Dr. Rodman's testimony also is contradictory in that it contradicted his earlier report. For example, Dr. Rodman's testimony is unclear as to whether Claimant's asthma was atopic in nature, yet in his January 21, 1983 report he clearly stated that Claimant was atopic. He also admitted that he did not conduct any tests to determine the cause of Claimant's attacks. Notwithstanding these limitations, Dr. Rodman concurs with the conclusions of Claimant's attending physician, Dr. Darnall, in

that Claimant is asthmatic and that he has suffered attacks from inhalants such as 'volatile solvents used in paints'. Moreover Dr. Rodman finds that Claimant can except [sic] to have more severe attacks in the future, some of which may require hospitalization unless he can find a well ventilated working environment.

13. Based upon all of the medical evidence it appears and I so find, that *Claimant's asthma was and is a pre-existing condition* which the environment (inhalants) in the Defendant Employer's auto body shop caused or 'triggered' resulting in asthmatic attacks (emphasis added).

The referee concluded that the claimant's asthmatic attacks were caused by inhalants in the employer's workplace environment and are therefore compensable under The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1-1601.1. On appeal the board affirmed the referee's decision.

Where, as here, the party with the burden of proof prevailed before the referee and the board took no additional evidence, our review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or a necessary finding of fact was unsupported by substantial evidence. *Dale Manufacturing Co. v. Bressi,* 491 Pa. 493, 421 A.2d 653 (1980).

The employer contends that the referee's finding of fact No. 7 is not supported by substantial evidence since there was evidence and testimony which supports his position that he and the claimant were partners. This argument is without merit since the referee found that there was either no partnership or that even if there was a partnership it was in addition to the already existing employer-employee relationship. Although there was conflicting testimony about the alleged part-

nership between the parties, it is clear that there is substantial evidence to support the necessary finding of fact that there was an employer-employee relationship. The employer continued to issue to the claimant wage tax statements, W-2 forms, pay his social security withholding taxes and pay him wages for four years while the alleged partnership was in existence. The claimant also testified that the employer directed him when to come and go and that he never left during working hours without speaking to the employer first.

The employer next argues that the referee's finding that the claimant's asthma was caused by his work environment in his finding of fact No. 13 is not supported by substantial evidence. First, we disagree with the employer's interpretation of the finding of fact. The referee found that the claimant's asthma was a preexisting condition and that the work environment caused or triggered his asthmatic attacks.[1] Review of the record discloses substantial evidence to support this finding. Dr. Darnall, claimant's expert, testified that when he first saw the claimant in February 1982, "[i]t was [his] impression at that time that [the claimant] was suffering from some bronchitis and with superimposed bronchospasm or wheezing...asthma, if you will." He also testified that he saw the claimant on March 4, 1982 and that the claimant was suffering at that time from "impending respiratory failure."

Dr. Darnall was presented with a proper hypothetical question which posed a situation much like the claimant's and asked:

Q. Based upon these presumed facts, do you have an opinion to a reasonable degree of medical certainty as to the cause of this man's respiratory problem?

---

[1] See the emphasized portions of finding of facts Nos. 11 and 13 for clarification.

[objection interposed by employer's attorney which was not pursued on appeal]

Q. Doctor we've been off the record. We're now back on the record. I would ask you if you have formed an opinion based on the hypothetical I've just put to you, whether you have an opinion as to the cause of his respiratory problems.

A. My impression of Mr. Muccigrosso's medical condition at the time I originally met him in February of '82 and at this time really don't differ significantly. At that time, it was my impression that Mr. Muccigrosso, who was a chronic smoker; probably had some mild chronic obstructive pulmonary disease, which on subsequent testing has not in fact proved to be all that significant.

However, he began to, for some unclear reasons—completely unclear reasons at that time—began to suffer from considerable exacerbations of asthma, which he had not suffered from in the past. In going over everything at the time, there was no clear-cut precipitating factor in my mind that I could identify *with the exception of the allergens that were in his environment at his place of employment*.

It seemed perfectly reasonable to me at that time that, in view of the fact that he was dealing with various metallic fumes, dusts of various sources, in what may have been a poorly ventilated area, that his—and with the history that he gave me at that time of clear-cut paroxysms of coughing and shortness of breath, perhaps wheezing at work that were coming and going over a several-month period, *that these factors were in fact related and that he had a hyper-*

*sensitivity to one or more likely several dusts or fumes at his place of employment,* which began to start a cycle of asthmatic diastheses or asthmatic. exacerbations and remissions.

After that initial episode, it was also clear that this was an emotional factor, perhaps related in some way to his work-related problems, that was continuing to perpetuate the cycle of asthma, followed by improvement up until the present time. (Emphasis added.)

Dr. Theodore Rodman, who examined the claimant and testified on behalf of the employer, stated that the claimant suffered from adult onset asthma and that the fumes or odor of paints may precipitate attacks in people who have asthma; and though he testified that theoretically the claimant could continue in his occupation as an auto body repairman he would predict "that unless he does his work in an extremely well ventilated environment, that he is likely to have fairly frequent attacks of asthma precipitated by the fumes to which he is exposed," and that he would advise a patient like the claimant to try to find some other form of work.

The referee's finding 13 therefore is, in our view, well supported in the evidence.

The employer next contends that the claimant's medical evidence of the relationship of his asthmatic attacks to his work environment was equivocal. We disagree. In *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas),* 77 Pa. Commonwealth Ct. 202, 206-207, 465 A.2d 132, 135 (1983), we wrote:

that as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or

that he thinks the facts exist. The claimant has, in such event, produced competent evidence of the facts which, if accepted by the fact finder will support an award, even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as the witness does not recant the opinion or belief first expressed.

By this standard Dr. Darnall's above-quoted testimony is clearly unequivocal.

The employer's final argument is that the claimant having filed his claim under Section 108(n) of Act, 77 P.S. §27.1(n), was not entitled to relief without having proven that the incidence of his disease is substantially greater in that industry or occupation in which he worked than in the general population. The board correctly relied on our decision in *Pawlosky v. Workmen's Compensation Appeal Board (Latrobe Brewing Co.)* 81 Pa. Commonwealth Ct. 270, 473 A.2d 260 (1984), in rejecting this argument. In *Pawlosky* we held that the aggravation of a preexisting disease was an injury as defined by Section 301(c)(1) of the Act and that it was not necessary that the claimant prove that the incidence of the condition complained of was greater in his occupation than in the general population. *Pawlosky,* 81 Pa. Commonwealth Ct. at 272, 473 A.2d at 261. In the instant case, the referee found that the Claimant's preexisting condition, asthma, was aggravated by his work environment.

The board's regulation at 34 Pa. Code §111.44(c) provides that although a claimant's pleading is inappropriate and unamended, the referee or the board may grant him the relief to which he is entitled under all of the evidence. *See Leed v. Workmen's Compensation Appeal Board (Quaker Alloy Casting Co.),* 95 Pa. Commonwealth Ct. 124, 504 A.2d 433 (1986).

For the foregoing reasons, the order of the Workmen's Compensation Appeal Board is affirmed.

### ORDER

AND NOW, this 16th day of May, 1986, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed