**B & T TRUCKING, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PAULL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 6, 2002.

Decided Jan. 31, 2003.

Lee A. Rhodes, Pittsburgh, for petitioner.

Gary D. Monaghan, Uniontown, for respondent.

Before: COLINS, President Judge, SMITH–RIBNER, Judge, and COHN, Judge.

OPINION BY Judge COHN.

B & T Trucking (B & T) appeals the February 25, 2002 order of the Workers' Compensation Appeal Board (Board) that reversed the decision of the Workers' Compensation Judge (WCJ) denying benefits to David J. Paull (Claimant).

On October 2, 1998, Claimant sustained injuries to his left shoulder, arm and hand while performing work duties as a truck driver for B & T. He filed a Claim Petition on March 29, 1999, seeking workers' compensation benefits for a closed period of disability from October 6 through November 22, 1998. (WCJ Decision Rendered, June 30, 2000, Findings of Fact (FOF) Nos. 1 and 3, p. 1). At the first hearing on this matter, held June 7, 1999, the parties stipulated that Claimant *had* suffered the injuries and disability as alleged, and the *only* issue in controversy was whether Claimant was to be considered an employee of B & T at the time of his injury, "under the terms and provisions of the Pennsylvania Workers' Compensation Act,[1] as amended." (FOF No. 4, p. 1)

---

1. Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4, 2501–2626. "Employe" is defined under the Act "to be synonymous with

(footnote added). The additional facts which follow are pertinent to our determination on this issue.

B & T was owned and operated by William Paull, Jr. (Mr. Paull) as a sole proprietorship until the time of his death on November 1, 1996. (FOF No. 5, p. 1; No. 7, p. 5). After that time, Daniel, one of Mr. Paull's three sons, ran the company and "made all of the business decisions while their father's estate was being administered." (FOF No. 5, p. 2). Claimant, another of Mr. Paull's sons, worked as a truck driver for B & T both before and after his father's death.[2] *Id.*

Mr. Paull completed his Last Will and Testament on April 7, 1992. Other than indicating a specific bequest for his grandchildren, Mr. Paull directed that the bulk of his estate be split equally between two of his three sons, specifically Daniel and William. (FOF No. 8).

At a June 7, 1999 hearing before the WCJ, Claimant testified that, before his father passed away, "he and his brothers met with their father." (FOF No. 5, p. 2). Mr. Paull advised them that after his death, "he wanted the business to be split up equally" among his three (3) sons. (*Id.*) Consequently, after their father's death, the three brothers signed and executed an "Agreement," dated November 6, 1996, which stated that their father's Will was not to be probated and that Daniel would serve as administrator of their father's estate. The Agreement also stated that the business would continue "with input from all the undersigned" and that the brothers intended to enter into a "Family Agreement" "whereby the business known as B & T Trucking [would] be shared equally by the parties." (Agreement, November 6, 1996, p. 2, ¶¶ 1–3; FOF No. 5, p. 3).

Several months later, on January 3, 1997, the three brothers submitted a "Petition to Continue Business" to the Court of Common Pleas of Fayette County which stated that the "three children have agreed that the business known as B & T Trucking should continue as appears from Agreement [dated November 6, 1996] attached hereto ..." (Petition to Continue Business, p. 2; FOF No. 5, p. 3).[3] All brothers signed a consent to the Petition which was granted by the court.

About one year later, on March 4, 1998, the three brothers signed a "Family Agreement," in which they agreed to distribute their father's assets "without the necessity of a formal accounting and petition for distribution." (Family Agreement, p. 1). Paragraph seven (7) of the Family Agreement specified that Claimant was to receive the following assets:

(a) $143,000 payable $105,000 upon execution hereof and the balance, to wit,

---

servant, and includes All natural persons who perform services for another for a valuable consideration...." 77 P.S. § 22. "Employer" is defined under the Act "to be synonymous with master, and to include natural persons, partnerships, joint-stock companies, corporations for profit, corporations not for profit, municipal corporations, the Commonwealth, and all governmental agencies created by it." 77 P.S. § 21.

**2.** It is unclear from the record whether Mr. Paull's third son, William, was involved in the business before Mr. Paull's death.

**3.** Claimant testified that he and his two brothers never formed any type of business interest to run B & T. (FOF No. 5, p. 2). Further, Joseph M. George, Sr., Esquire, attorney for the Estate of William Paull, Jr., testified during his deposition that he never prepared any documents incorporating B & T. He did recall drafting a Partnership Agreement between Daniel and William naming them as partners operating and doing business as B & T. (FOF No. 7, pp. 5–6). However, the WCJ made no finding as to the current business structure of B & T.

$38,000 payable in 38 equal consecutive monthly installments of $1,000 each, without interest. . . . Daniel V. Paull, Sr. and William Paull III shall execute a note evidencing the monthly payment obligations set forth herein and to secure said indebtedness shall execute a mortgage in the amount of $38,000.00 on real estate located at 600 North Gallatin Avenue, North Union Township, Fayette County, Pennsylvania;

(b) 1996 Harley–Davidson Motorcycle.

(c) No. 8 Kenworth Tractor (638125)(said tractor has been sold and the said David J. Paull has received the proceeds, $3,500.00 therefrom);

(d) 2 horses and a donkey, including assorted tack;

(e) 1 Allis Chalmers Tractor (5020A). . . .

*Id.,* ¶ 7. Daniel and William were to receive, *inter alia,* "equally, share and share alike"

\* \* \*

(c) All remaining real estate in said estate, all other personal property remaining in said estate, and *all assets, goodwill and name of business known as B & T Trucking including trucking business, accounts receivable, cash, snowmobiles, 8,000 gallon tanker, and other miscellaneous business property.*

*Id.* (emphasis added).

On November 25, 1998, Claimant signed a "Receipt and Agreement" acknowledging receipt of $143,000, pursuant to the terms of paragraph seven (7) of the Family Agreement dated March 4, 1998. (FOF No. 11, p. 6–7). The Receipt and Agreement also indicated that Claimant agreed "to execute any and all documents neces-

sary to indicate his withdrawal from the business known as B & T Trucking in accordance with paragraph 7 of said Agreement." (Receipt and Agreement, November 25, 1998; FOF No. 11, p. 7).

After four hearings on this matter,[4] the WCJ concluded that Claimant was a one-third owner of B & T, not an employee of the company and, thus, denied him benefits. Claimant appealed the WCJ's decision to the Board, which reversed on February 25, 2002; it found that although Claimant was part owner of B & T, he was also an employee at the time of his injury. The Board remanded the case to the WCJ to make findings concerning Claimant's average weekly wage and subsequent benefits rate. B & T now appeals the Board decision to our Court.

■■ Our review in a workers' compensation case, where both parties presented evidence before the WCJ and the Board takes no additional evidence, is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Thompson v. Workers' Compensation Appeal Board (Sacred Heart Medical Center),* 720 A.2d 1074 (Pa. Cmwlth.1998), *petition for allowance of appeal denied,* 559 A.2d Pa. 699, 729 A.2d 99 (1999). The WCJ is the sole finder of fact when the Board takes no additional evidence. *Pritchett v. Workers' Compensation Appeal Board (Stout),* 713 A.2d 1214 (Pa.Cmwlth.1998). A WCJ's findings of fact can be reversed only if not supported by substantial, competent evidence or if arbitrary and capricious. *Id.*

■■ In an original claim petition, as here, the claimant has the burden of proving all elements necessary to support an

---

4. Hearings were held on June 6, 1999, August 25, 1999, October 13, 1999, and January 27, 2000 before the same WCJ. The WCJ rendered her decision on June 30, 2000.

award.[5] *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). Of particular importance in the case *sub judice* is the requirement that a claimant demonstrate the existence of an employment relationship at the time the injury occurred. Section 301(c)(1) of the Act, 77 P.S. § 411.1; *Baum v. Workers' Compensation Appeal Board (Hitchcock)*, 721 A.2d 402 (Pa. Cmwlth.1998). Whether an employer-employee relationship exists is a question of law based upon findings of fact. *JFC Temps, Inc. v. Workmen's Compensation Appeal Board (Lindsay and G & B Packing)*, 545 Pa. 149, 680 A.2d 862 (1996).

■ The existence of an employer-employee relationship must be determined on a case-by-case basis with reference to four elements: "(1) the right to select the employee; (2) the right and power to remove the employee; (3) the power to direct the manner of performance; and (4) the potential power to control the employee." *Sunset Golf Course v. Workmen's Compensation Appeal Board (Department of Public Welfare)*, 141 Pa.Cmwlth.103, 595 A.2d 213, 216 (1991), *petition for allowance of appeal denied*, 529 Pa. 654, 602 A.2d 863 (1992).

In the case *sub judice*, however, the WCJ did not apply these four elements to the facts. Rather, she stated

Based upon my review and consideration of all of the evidence presented in this matter, I find that on the date of his injury ... and during his entire period of disability ... the claimant, David Paull, was a *one-third (⅓) owner* of B & T Trucking. I further find that the claimant's ownership interest with B &

T Trucking at the time would *preclude* the claimant from being considered an "employee" of B & T Trucking, in accordance with the terms and provisions of the Pennsylvania Workers' Compensation Act, as amended, on the date of his injury and during his entire period of disability.

(FOF No. 13, p. 7) (emphasis added). (*See also* Conclusion of Law No. 3, p. 9.) The WCJ based her decision "upon all of the testimony and documentation of record which establishe[d] that" the three brothers signed an Agreement that their father's will would not be probated, that Claimant would share equally in the B & T business, and that Claimant's brothers, Daniel and William, paid him $83,000 and allowed him to take a $36,000 mortgage against B & T "so that they could buy out [his] ownership interest...." (FOF No. 13, pp. 7–8).

We agree with the WCJ that substantial evidence exists in the record to support the conclusion that Claimant had an ownership interest in B & T. However, we cannot agree with the WCJ that, simply because Claimant had an ownership interest in B & T, he had to be considered an *employer* under the Act which, thereby, precluded him from obtaining benefits.

■ It is certainly true that an individual cannot be an *employer* and an *employee* at the same time. *Deichler v. Workmen's Compensation Appeal Board (Emhart/True Temper)*, 143 Pa.Cmwlth.189, 598 A.2d 1030, 1032 (1991), *petition for allowance of appeal denied*, 530 Pa. 662, 609 A.2d 169 (1992) (claimant was self-employed); *Herman v. Kandrat Coal Company*, 205 Pa.Super. 117, 208 A.2d 51,

**5.** "To prevail in a workers' compensation case, a claimant must show that an employment relationship existed, that the accident or injury occurred in the course of his employment, and that the accident or injury was related to that employment." *Tri–Union Express v. Workmen's Compensation Appeal Board (Hickle)*, 703 A.2d 558, 561 (Pa. Cmwlth.1997).

54 (1965) (claimant was in a partnership); *Coccaro v. Herman Coal Company*, 145 Pa.Super. 81, 20 A.2d 916, 919 (1941) (claimant named himself employer in indemnity contract). However, in the case *sub judice*, the WCJ did not find Claimant to be an *employer* and, therefore, this principle would not apply to preclude Claimant's benefits. Rather, the WCJ found Claimant to be an *owner*, and, as the Board correctly stated, based on its review of *Rightley v. Workmen's Compensation Appeal Board (Muccigrosso)*, 97 Pa. Cmwlth.291, 509 A.2d 905 (1986) and *Erie Insurance Exchange v. Workmen's Compensation Appeal Board*, 56 Pa.Cmwlth. 77, 423 A.2d 1145 (1981), a person with an ownership interest can also be considered an employee under the Act, under certain very limited circumstances.

In *Rightley*, an employer alleged that the claimant was a *partner* in his wheel alignment business and did not become disabled as a result of his employment. The referee (WCJ) granted the claimant's claim petition, finding that he was an employee at the time of his injury. In making this finding, the WCJ rejected the testimony of the employer stating that it lacked credibility due to many inconsistencies. The WCJ held "there was no partnership or, in the alternative, if there was, it was in addition to the already existing employer-employee relationship between Claimant and Defendant Employer within the meaning of the Act." *Id.* at 907. The Board affirmed the WCJ's award of benefits to the claimant, and this Court affirmed stating:

Although there was conflicting testimony about the alleged partnership between the parties, it is clear that there is *substantial evidence to support the necessary finding of fact that there was an employer-employee relationship.* The employer continued to issue to the claimant wage tax statements, W–2 forms, pay his social security withholding taxes and pay him wages for four years while the alleged partnership was in existence.

*Id.* at 908 (emphasis added).[6]

Furthermore, in *Erie Insurance Exchange,* an opinion which poses precisely the same legal issue as the case *sub judice,* our Court affirmed the Board and the WCJ when they held that the claimant was an employee even though he owned a farm jointly with his mother. Certain facts led directly to the Court's legal conclusion that claimant [wa]s an employee: his mother executed a deed conveying him a joint interest; he did considerable manual labor and "managed" the farm; he was paid $120 a week by his mother; she filed federal income tax returns showing herself as receiving all the income from the farm; she paid social security tax for the claimant as an employee; she held the cattle and the machinery in her sole ownership; claimant was carried as an employee on petitioner's workmen's compensation insurance, and premiums were paid to petitioner's insurance company on his salary. *Id.*[7]

The determining issue, as the cases cited by the Board illustrate, is whether Claimant was an employer under the Act

---

**6.** In the case at bar, neither the WCJ nor the Board found B & T to exist in the form of a partnership at any pertinent time. (FOF no. 7, pp. 5–6). Thus, the Board did not cite *Rightley* for the proposition that a person could be a partner and an employee at the same time, but rather as an example of where there existed substantial evidence to support

an employer-employee *relationship. Rightley,* 509 A.2d at 908.

**7.** While not exactly on point because the case involves a corporation, we find additional support in *Gray v. Gray Printing Company,* 87 Pa.Super. 302 (1926) (*petition for allowance of appeal denied*), which shows that an individual may hold two distinct roles in a com-

at the time of his injury. Although there is some evidence in the existing record that Claimant's role in the company was the same before and after his father died, we cannot determine on this record whether an employer-employee relationship existed. For instance, we know that he continued to receive wages and W–2 forms for performing his duties as a truck driver, and that he made no business decisions concerning B & T. However, it is not clear who directed Claimant's performance, who set his salary and his schedule, whether he was carried as an employee on B & T's workmen's compensation insurance, and to whom he had to report. Since these latter issues were not addressed, we are forced to remand the case for the WCJ to apply the test for the existence of an employer-employee relationship set forth in *Sunset Golf Course*, and to take into consideration

evidence regarding the other issues as set forth above. Upon remand the parties may submit additional evidence.

Accordingly, we vacate the order of the Board and remand the case to the WCJ as specified in this opinion.

### ORDER

NOW, January 31, 2003, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby vacated and the case is remanded to the Board with direction that it further remand the matter to the WCJ for consideration as directed in this opinion.

Jurisdiction relinquished.

pany at the same time, and *possibly* be entitled to workers' compensation benefits under certain limited circumstances.

In *Gray*, the deceased was one of four stockholders in the defendant corporation. Each owned equal shares and served as an officer, but none received any salary by virtue of his office. They mutually agreed to perform certain services for the corporation, and were compensated for these services but not in their capacities as officers of the corporation. Gray was killed while performing one of these services. In holding that workers' compensation was properly due Gray's widow, the Superior Court explained:

> [I]f an executive officer of a corporation is engaged by the corporation in some other capacity and the facts show that an alleged injury resulted whiled engaged in the service of the company while performing the duties of his employment, which were outside of the executive duties, compensation would be allowed. There is no inconsistency in occupying a dual capacity in a corporation, one as an executive and one as an employee, and when the facts disclose this condition to exist and an injury results while in the performance of an executive duty no compensation can be had under the Workmen's Compensation Act, because

compensation to an executive injured in the performance of his duties as such is not within the purview of the Act. But there being nothing unlawful in a corporation employing an executive officer as a workman and the corporation being a separate and distinct entity in law, if the facts disclose that the injury was the result of the performance of the duties for which the injured was employed, compensation would be allowed as being within the purview of the Act and the meaning of the term employee.

*Id.* at 9–10. *See also Eagleson v. Harry G. Preston Company*, 265 Pa. 397, 109 A. 154 (1919) (salesman of corporation making a weekly wage was also director of corporation but received no salary, wages or income by reason of such office and was held to be an employee within the purview of the Act). *But see Carville v. A.F. Bornot & Co.*, 288 Pa. 104, 135 A. 652 (1927) (injured person who occupied position of an official of corporation and received salary or income by reason of such office was not considered an employee under the Act); *Nirenstein v. Camp Colang, Inc.*, 111 Pa.Super. 72, 169 A. 404 (1933) (claimant who was vice-president and stockholder was injured while performing duties as executive officer of corporation and thus not considered an employee under the Act).