## Springer *versus* Lewis.

1. The 8th section of the Act of 23d April, 1846, exempting a horse, harness, and plough from execution "when owned by any person actually engaged in the science of agriculture," is repealed by the Act of 9th April, 1849, only as to debts contracted after the 4th July, 1849.

2. The *time* to which the inquiry as to the debtor's occupation relates, is the time of the levy of the execution.

3. A man who keeps a tavern and boarding-house, and works at his trade as a tailor in the winter, may also be a person " actually engaged in the science of agriculture," within the meaning of the statute.

4. A person is " actually engaged in the science of agriculture" when he derives the support of himself and family, in whole, or in part, from the tillage of *fields*. He must cultivate something more than a garden, though it may be much less than a farm.

5. A tenant whose lease expired in the spring of 1851, and who declared his intention in the winter before to remove to the west that spring, and did remove, was entitled to the exemption of the Act during the winter of 1850–1, and until his lease expired.

ERROR to the Common Pleas of *Fayette county*.

This was an action of trespass by Samuel T. Lewis *v.* Calvin Springer. The action was brought against the defendant, who was a constable, for levying upon and selling a horse and set of harness, bridle, collar, and chain, then the property of Samuel Lewis. Lewis died, and Alexander McClean, the administrator of his estate, was substituted. It was claimed, on the part of the plaintiff, that the horse was exempt from levy and sale under the 8th section of the Act of 22d April, 1846, which provides as follows:

" The following property, in addition to that already exempt from levy and sale by virtue of any execution or distress for rent, shall, when owned by any person *actually engaged in the science of agriculture*, in like manner be exempt from levy and sale, viz.: one horse, mare, or gelding, not exceeding in value fifty dollars; one set of horse gears, and one plough, or in lieu thereof, one yoke of oxen, with yoke and chain, and one plough, at the option of defendant."

The horse was levied on under an execution issued 21st January, 1851, returnable on 10th February.

On the trial, it appeared that at the time of the levy, Lewis had but one horse. That in 1850 and 1851, he lived at the Fayette Springs, which he had leased, and where he kept a boarding-house. It was testified, *on part of the plaintiff*, that there were 35 acres in one field, and about the Springs 8 to 10 acres—that he farmed most of the land; raised buckwheat, potatoes, corn, oats, and sowed some wheat. He went to *Iowa* in the spring of 1851.

Another witness testified that he lived with Lewis in 1850. He farmed some—had five acres of buckwheat and one acre of pota-

[Springer *v.* Lewis.]

toes—6 or 7 acres of wheat in the fall before—a small patch of corn, and one horse.    The witness left him in November, 1850.

On part of *the defendant* it was shown that in 1849 Lewis was assessed as an inn-keeper, for two horses, value, $60.    In 1850 he was assessed as a tailor—and one horse.

· It was testified that Lewis kept a boarding-house at Fayette Springs, but left in the spring of 1851.    In the winter he said he was going away in the spring.    Part of the time he worked at tailoring.

By another witness it was testified, that Lewis kept a boarding-house at the Springs—when the season was over he tailored.    He farmed some : had a small patch of potatoes and a few rows of corn ; four or five acres of buckwheat; some wheat put in in the fall of 1849.    *    *    *    His principal business was to keep tavern.

Another witness testified that he never knew Lewis to follow any other business but tavernkeeping and tailoring, after he went to the Springs.    That he told the witness, in the fall of 1850, that he was going to the west; that he would go in the spring.    He went in May, 1851.

GILMORE, President Judge, charged the jury that a person could be a farmer and an innkeeper at the same time.    That, having declared his intention to leave the country in the fall, and making his arrangements accordingly, and actually going in the spring, at the time appointed, did not, in the mean time, deprive him of the character of farmer, nor did he cease during this period to be the object of exemption under the provisoes of the Act of 22d April, 1846 ; and he refused to charge the jury, that if all the evidence was believed, the plaintiff was not entitled to recover.

Verdict for plaintiff for $52 ; and, April 8, 1853, judgment.

It was assigned for error that the Court erred in charging that Lewis, having declared his intention in the fall to leave the country, and making his arrangements, and going in the spring, did not deprive him of the character of farmer, &c. ; 2. In refusing to charge that the plaintiff was not entitled to recover ; 3. In the construction given to the Act of 1846 ; and 4. In not submitting it to the jury to say whether, from the evidence, the plaintiff's intestate at the time of the levy and sale was actually engaged in the science of agriculture.

*Howell,* for plaintiff in error.

*Kaine,* for defendant in error.

The opinion of the Court was delivered by

[Springer v. Lewis.]

WOODWARD, J.—The question here is, whether, under the circumstances in proof, the horse and harness of Samuel Lewis, levied on at the suit of his creditor, B. F. Hellen, about the last of January, 1851, were exempt from levy and sale by virtue of the 8th section of the Act of Assembly of 22d April, 1846, which exempts, *inter alia,* one horse, harness, and plough, "when owned by any person actually engaged in the science of agriculture." Though this section was repealed by the Act of 9th April, 1849, yet the 6th section of the repealing law applies its provisions only to debts contracted on and after the 4th of July, 1849, so that as to debts contracted before that date the Act of 1846 seems to be still in force.

Whether Lewis's debt was contracted before or after that date, and when the judgment was obtained against him, are matters concerning which the paper-book is studiously silent; but as the Court ruled the case upon the Act of 1846, without taking notice of its repeal, we shall presume that the judgment and execution against Lewis were founded on a debt contracted prior to the 4th July, 1849, and therefore subject to the provisions of that Act.

Was Lewis then "actually engaged in the science of agriculture?" The time to which this inquiry relates is the time of the levy, which is not given in the paper-book; but as the execution was issued on the 21st of January, 1851, returnable the 10th of February ensuing, we may assume the time of the levy to have been about the last of January, 1851. It appears, from the evidence, that Lewis was a tailor by trade; that in 1849 he rented and moved to the Fayette Springs property, consisting of a tavern house and some forty acres of cleared land; that he kept tavern and a boarding-house; let out part of the land to farm on shares, and farmed the rest himself; and in the summer of 1850, raised the usual variety of crops, and when the farming season was over, he "tailored," as the witnesses called it. In the fall of 1850 he declared his intention to go west the next spring as far as he should be able; and the proof was, that he did move to the west in May, 1851.

A person is "actually engaged in the science of agriculture" when he derives the support of himself and family in whole, or in part, from the tillage and cultivation of fields. He must cultivate something more than a garden, though it may be much less than a farm. If the area cultivated can be called a field, it is agriculture, as well in contemplation of law, as in the etymology of the word. And if this condition be fulfilled, the uniting of any other business, not inconsistent with the pursuit of agriculture, does not take away the protection of the Act. The keeping tavern and boarding-house, and the working at his trade as a tailor in the intervals of the seasons for farming, did not divest Lewis of the benefits which the statute was intended to secure to him. The Act extends its

[Springer *v.* Lewis.]

protection over the property of the agriculturist during the winter, when he is obliged to suspend his labors in the field, as effectually as in the summer, while actively engaged in rearing or harvesting crops.

Nor did his talk of going to the west take from Lewis the character which his occupation had impressed. The facts in evidence brought him abundantly within the description of a person "actually engaged in the science of agriculture;' and in January, 1851, he was entitled to all the immunities which the law gave him, and which were in no manner affected by his declared intention of removing westward. As tenant of the property at Fayette Springs, all his rights remained whilst his lease lasted. If his creditors wished to seize his horse in execution, they should have waited till his term expired. As it was, their levy was premature, and the action against the constable was well brought.

Judgment affirmed.