Harvey, J.,
The claimant, George H. Spohn, was allowed compensation by award of the Workmen’s Compensation Board pursuant to the terms of The Workmen’s Compensation Act of June 2, 1915, P. L. 736. The compensation board affirmed the findings *535 of fact, with correction not now of concern, and conclusions of law of the referee and dismissed the appeal of the defendant. The matter is before us on appeal from the decision and action of the board.
There was sufficient competent evidence to sustain the findings of fact of the referee, and the question of law raised by the exceptions on this appeal is whether the claimant was at the time of his injury an agricultural worker; that is, was he a person engaged in agriculture within the meaning of the Act of June 3,1915, P. L. 777, a supplement to The Workmen’s Compensation Act of 1915, as amended by the Act of July 18, 1935, P. L. 1316?
On November 8, 1933, the date of the injuries to the claimant, the defendant was the owner of a tract of land in this county which he did not then occupy but which he was then having prepared for the business of breeding and raising silver foxes.
The claimant was employed by the defendant as a common laborer for the purpose of clearing the ground for the location of suitable pens for such foxes and for the purpose of assemblying and erecting such pens. In the course of such employment, while directing a truck delivering unassembled pens to the place on the land intended for their erection, the claimant fell under the wheels of the moving truck and sustained the injuries giving rise to the claim.
At the time of the hearing before the referee in 1934 the defendant was occupying the said tract as a farm and was also engaged in the business of breeding and raising such foxes.
The supplementary Act of 1915, as amended, supra, exempts “agricultural workers” from the provisions of The Workmen’s Compensation Act of 1915: Matis et al. v. Schaeffer, 270 Pa. 141; that is, it exempts those who, at the time of the injury, are engaged in “agriculture”. In order to determine whether one employed or engaged in the business of breeding and raising silver foxes is within the meaning of that act, we must consider the *536 definition of the word “agriculture” in the body of the act and the sense in which the legislature used that word and the words “agricultural workers” in the title to the act.
“Agriculture as defined by Webster is the ‘art or science of cultivating the ground, especially in fields or in large quantities, including the preparation of the soil, planting of seeds, the raising and harvesting of crops and the rearing, feeding and management of livestock’ ”: Bucher v. American Fruit Growers Co., 107 Pa. Superior Ct. 399, 403.
In Webster’s New International Dictionary this definition continues as follows: “tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man’s use. . . . In this broad use it includes farming, horticulture, forestry”. . . .
The opinion in the case of Bucher v. American Fruit Growers Co., supra, also states:
“In Funk & Wagnall’s dictionary agriculture is defined as ‘a science that treats of the cultivation of the soil,’ and under this definition it is stated ‘agriculture as a generic term includes at once the science or art and process of supplying human wants by raising products of the soil and-by associated industries.’ ”
As we said in Cox v. Hoopes Brothers and Thomas Company et al., September term, 1935, no. 53, in this court:
“It thus appears that in the dictionary definitions agriculture is given the generic and broad sense which includes not only the more circumscribed and limited sense of cultivating the ground, especially in fields or in large quantities: Springer v. Lewis, 22 Pa. 191; including the preparation of the soil, planting of seeds, the raising and harvesting of crops, such as grain or fruit, that is, crops cut or gathered in a single field, or of a single kind, or in a single season, or part of a season, and the rearing, feeding and management of livestock, but including also the *537 production of plants and animals useful to man and the supplying of human wants by raising products of the soil and by associated industries”.
We do not believe that the business of breeding and raising of silver foxes is within the meaning of the word “agriculture” in its broad and generic sense as thus defined, but we are not called upon to decide such a question, because we are of the opinion that the legislature used that word in its limited and popular sense.
In common parlance and, therefore, in the usual and commonly accepted use of the terms “agriculture” and “fox raising” or “fox farming”, the first does not include either of the last, nor does “agricultural workers” include laborers employed on a “fox farm” or “fox ranch”. In popular meaning one is engaged in agriculture when his occupation is tilling the soil and raising crops. Whatever else may be incidental, the criterion is the cultivation of the soil and the harvesting of seasonal products. Such a one usually rears, feeds, and obtains the natural products of “livestock”, but such livestock are domestic animals only, in their very nature an incident to the cultivation of and the raising of crops from the soil of their environment and obtaining their sustenance directly from and fertilizing that soil and its plant products. In the popular sense “livestock”, in connection with tillage and raising crops, does not include any wild or undomestieated animal required to be closely confined and having little relation to the soil of its confinement except to occupy it.
“. . . undefined words used in the statute must be taken in their ‘popular sense/ if such sense is ‘not contradictory to the object and intention of the lawmakers’ ”: Carville v. Bornot & Co., 288 Pa. 104, 112. The act was “passed for the benefit of the great army of business and industrial wage earners”: Carville v. Bornot & Co., supra, 112; the act is remedial, and it is the duty of the courts to construe it liberally, having in mind the benevolent and humanitarian purpose of its enactment: Manley v. Lycoming Motors Corp., etc., 83 Pa. Superior Ct. 173. *538 Briefly, the objects and purposes of The Workmen’s Compensation Act were to remedy the result of modern industrial development and conditions requiring the cooperation of many employes and the extensive use of powerful and dangerous mechanical appliances and machinery, leaving injured employes without adequate or certain relief under common-law actions and, generally speaking, imposing the burden of the economic loss on the employes. The remedy was to establish in law a system which would tend to give the employe a more equitable, inexpensive, speedy, and certain relief and to shift the burden from the employe to be absorbed by the proceeds of the industry.
The purpose of the act is “to relieve to some extent the employee who has been injured in the course of his employment from the economic consequences of his injury and make them a part of the cost of operation of the business, to be paid ultimately by the consuming public, and it should be so construed as to carry this purpose into effect” : Hale v. Savage Fire Brick Co., 75 Pa. Superior Ct. 454, 462.
Those whose occupation most surely falls within the popular and limited sense of “agriculture”, and who are of the most ancient class of direct producers, are those tillers of the soil commonly known as farmers and farm hands. “ ‘Agriculture’ covers all things ordinarily done by the farmer and his servants incidental to the carrying on of his branch of industry”: Warner v. Longstreth, 108 Pa. Superior Ct. 124, 126. “Agriculture” in its limited sense is practically still in the era of the small shops, few unit employes and simple machinery; “agriculture” alone, in this limited sense, would probably never have given rise to the conception of workmen’s compensation. The very nature of the occupation of the tillers of the soil, where the employer and the employed in the majority of the units are manual laborers with each other, and where the employes are few in number, and where it is not so clearly indicated that the economic loss by injury to the employed should be absorbed by the business, *539 and where the employed are not subjected to the ever present risks of injury concomitant with the use of vast and complicated machinery, and other similar considerations, must have given rise in the minds of the lawmakers to the distinction in applying workmen’s compensation principles between this class of workers and business and industrial workers, and that distinction was recognized by the exemption of agricultural workers from the provisions of The Workmen’s Compensation Act. We do not intend to say that the legislature by “agriculture” meant solely the so-called farmer and farm hand, as we have referred to them, but we believe that, having them principally in mind, the lawmakers used the term in its popular and limited sense. We are of opinion that the legislature used the word “agriculture” in its popular and limited sense and that such meaning, excluding a laborer employed in the business of breeding and raising silver foxes, is not contradictory to the object and purpose of the lawmakers, but, on the contrary, is consistent with an intention of the lawmakers to protect all workers except those who are engaged in agriculture in its limited sense.
We conclude, therefore, that the claimant was not, at the time of his injuries, engaged in agriculture and was not then an agricultural worker within the meaning of the said supplementary Act of 1915, as amended. It follows and we hold that he is entitled to compensation pursuant to the terms of The Workmen’s Compensation Act of 1915.
The determination of the question whether the employment was casual and not in the regular course of the defendant’s business was dependent upon underlying evidential facts which were found by the referee against the defendant upon ample evidence that the defendant was, at the time of the injuries to the claimant, engaged in the business of a “raiser of foxes”, a regular occupation with a view to some gain: Blake v. Wilson, 268 Pa. 469; and that the claimant was employed in and furthering the regular course of that business of his employer. The clearing of ground and the delivery, assembling, and erecting *540 of pens was a normal operation, constituent of the business, and the defendant is responsible: Sgattone v. Mulholland & Gotwals, Inc., et al., 290 Pa. 341.
Whether the defendant was then also a farmer is immaterial. As the board well stated in the opinion of the commissioner: “If a farmer, engaged in agriculture, chooses to engage also in outside industrial operations his employees in such outside transactions are within the protection of The Workmen’s Compensation Act”: Warner v. Longstreth, 108 Pa. Superior Ct. 124.

Decree

And now, April 6, 1936, the appeal is dismissed and the award and order of the Workmen’s Compensation Board is affirmed. Judgment is entered in favor of the claimant, George H. Spohn, and against the defendant, Albert F. Brown, in the sum of $387.77, with interest at the rate of six percent per annum on the amount of compensation at the time the first payment is made after this adjudication, and also in the additional sum of $103, covering medical, surgical, and hospital service.