# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Knowlton,                :
               Petitioner     :
                           :
       v.                   :    No. 618 C.D. 2021
                           :    Submitted: November 5, 2021
Flemingtown Instrument Co. Inc.  :
(Workers' Compensation Appeal   :
Board),                          :
            Respondent   :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE J. ANDREW CROMPTON, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY PRESIDENT JUDGE BROBSON**         **FILED: December 29, 2021**

Thomas Knowlton (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated May 5, 2021. The Board affirmed the decision of a Workers' Compensation Judge (WCJ), which, *inter alia*, granted Claimant's claim petition for a closed period. For the reasons set forth below, we affirm the Board's order.

Claimant worked for Flemingtown Instrument Co. Inc. (Employer) as a steamfitter. On May 1, 2017, Claimant suffered an injury in the course and scope of his employment when he bent over to retrieve a saw from a gang box and felt pain in the left side of his lower back. Claimant filed a claim petition on June 8, 2017, alleging that he sustained injuries to his lower back, a herniated disc, and

radiculopathy while working for Employer on May 1, 2017. Claimant sought payment of benefits from May 4, 2017, onward. The claim petition was assigned to a WCJ, and Employer filed an answer in opposition to the claim petition.[1]

In support of his claim petition, Claimant testified before the WCJ at a hearing held on June 29, 2017. Claimant testified that his job duties for Employer included cutting, bending, and threading pipe; putting screw pipe together; running tubing; welding; setting up tripods; and using tools such as electric band saws, hammer drills, and regular hand tools. (Certified Record (C.R.), Item No. 19, at 5.) Claimant further testified that, on the day the alleged injury occurred, he "bent over to pick a porta band up out of a gang box and [he] felt pain in [his] lower back." (*Id.*) When asked how much the "gang box that [he was] lifting" weighed, Claimant clarified that he "wasn't lifting the gang box. [He] was reaching in[to] it to get a saw out of it." (*Id.* at 6.) Claimant further testified to, *inter alia*, the pain and other symptoms he experienced following the work-related injury, his age of 33 years and lack of symptoms prior to May 1, 2017, and the treatment he received for the work-related injury. (*Id.* at 5-17.)

Claimant also presented the deposition testimony of Steven J. Valentino, D.O., who is a board-certified orthopedic surgeon and fellowship-trained spine surgeon. (Reproduced Record (R.R.) at 5a-6a.) Dr. Valentino testified that Claimant first came into his care on June 20, 2017, at which time, he discussed Claimant's complaints, performed a physical examination of Claimant, and reviewed a magnetic

---

[1] Claimant subsequently filed a penalty petition, averring that, *inter alia*, Employer failed to issue a timely notice of compensation payable, notice of temporary compensation payable, notice of compensation denial, or agreement for compensation in violation of Section 406.1 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1. The WCJ denied and dismissed the penalty petition, which is not at issue in this appeal.

2

resonance image (MRI) of Claimant's lumbar spine that was taken on May 22, 2017. (*Id.* at 7a-10a, 12a.) At the time of the appointment, Claimant was complaining of back pain that was localized to his lumbar/sacral region and radiated into the back of his left leg to the outside of his foot, along with numbness and weakness. (*Id.* at 7a.) Dr. Valentino stated that the description of Claimant's symptoms was consistent with an "S1 radiculopathy or disc problem at L5-S1." (*Id.* at 8a.) Dr. Valentino testified that Claimant told him that his symptoms were worse with standing and extension, and they lessened with rest and recumbency. (*Id.*) Dr. Valentino also stated that Claimant related the symptoms to the work injury that occurred on May 1, 2017, "when, while employed as a steamfitter, he lifted a tool from a gang box and felt pain in the low back." (*Id.*) Dr. Valentino further explained that, while Claimant continued to work following the May 1, 2017 work-related injury, he experienced increased pain over the following days. (*Id.*) Claimant "denied any prior history of symptoms or injury to the lumbar spine." (*Id.* at 8a-9a.)

Dr. Valentino explained that his physical examination revealed that Claimant's "range of motion of the back was significantly limited in all planes," that "[e]xtension combined with side bending reproduced back pain," and that Claimant had "significant spasm" and "facet irritation emanating from the lumbar spine." (R.R. at 9a.) Dr. Valentino also stated that a "[s]traight leg raising test reproduced left leg pain at 40 degrees." (*Id.*) Further, Claimant "had an absent left S1 reflex, consistent with a symptomatic left L5-S1 disc herniation[, and] four-out-of-five weakness lateral ankle pronators with decreased sensation left S1 greater than L5 dermatome." (*Id.* at 9a-10a.) Dr. Valentino also explained that a review of Claimant's MRI "confirmed that he had a left paracentral disc herniation at L5-S1," which Dr. Valentino characterized as "compatible with his symptoms and his

3

mechanism of injury," as well as "some early age-related degenerative changes." (*Id.* at 9a, 12a.) Dr. Valentino explained that, given the objective MRI findings and that Claimant had never had any back problems before, it was "clear that [Claimant's condition] is causally related to the work injury by direct cause." (*Id.* at 12a.) In so doing, Dr. Valentino noted that it was not typical to see a degenerative herniation in a 33-year-old. (*Id.* at 13a.) Dr. Valentino also testified that, after reviewing the MRI, performing his physical examination, and discussing Claimant's complaints, his initial impression was that Claimant "had residuals of his work-related injury, to include lumbar strain, lumbar disc herniation with radiculopathy, and facet syndrome." (*Id.* at 10a.) Dr. Valentino explained that, following Claimant's initial appointment, he found that Claimant "continued to suffer residuals of his work injury and was not able to return to work." (*Id.* at 14a.)

Dr. Valentino explained that he saw Claimant again on July 25, 2017, at which point Claimant reported the same complaints and wanted to move on with more aggressive intervention, but that Claimant's treatment thus far had been limited because his workers' compensation claim had not yet been accepted. (R.R. at 14a-15a, 19a.) Dr. Valentino stated that, to date, Claimant had received chiropractic care and acupuncture. (*Id.* at 14a-15a.) Noting that he had also reviewed additional treatment records following his initial appointment with Claimant, including records from Dennis Ivill, M.D.,[2] as recent as August 28, 2017, Dr. Valentino testified that "so far, [Claimant] has not demonstrated any significant gains in improvement" and was not able to return to work. (*Id.* at 11a, 15a-16a.) Dr. Valentino stated that his current diagnosis for Claimant would be "[l]umbar disc

---

[2] It appears that Dr. Ivill provided acupuncture to Claimant, (R.R. at 58a), and at one point recommended "trigger point injections" for Claimant. (*Id.* at 16a.)

4

herniation left at L5-S1, with radiculopathy, as well as facet syndrome, in addition to residuals of a lumbar strain." (*Id.* at 16a.) When asked whether Claimant's "mechanism of injury, picking up a large or a heavy object, [is] consistent with the injury that [Claimant] is presenting with," Dr. Valentino responded affirmatively, further opining that Claimant's "symptoms relating to treatment and disability are related to the work injury which occurred" on May 1, 2017. (*Id.* at 17a.) Dr. Valentino also confirmed that all of his conclusions were offered within a reasonable degree of medical certainty. (*Id.* at 17a-18a.)

On cross-examination, Dr. Valentino explained that he reviewed both the MRI films and MRI report. (R.R. at 20a-21a.) With respect to the degenerative changes revealed on the MRI, Dr. Valentino stated that Claimant had "some facet arthropathy and a little bit of arthritis in the facet, and [Dr. Valentino thought Claimant] aggravated that facet syndrome in work." (*Id.* at 21a.) Dr. Valentino did not, however, believe that "[t]he disc herniation at [L]5-[S]1 [was] degenerative. [Rather, Dr. Valentino] would deem [the disc herniation as] acute and related to the work injury." (*Id.*) Dr. Valentino confirmed that the facet findings were more right-sided, stated that Claimant had complained of bilateral low back pain that was not localized to one area, and explained that "[t]he sciatic complaints or radiculopathy is very specific to the left leg." (*Id.* at 21a-22a.) Dr. Valentino also confirmed that, in his reports, Dr. Ivill indicated that Claimant's sensation was found to be intact, his strength was normal, and his distal pulses were intact bilaterally in his lower extremities. (*Id.* at 23a-24a.) Dr. Valentino further admitted that Dr. Ivill's findings were basically identical across all the times that Dr. Ivill treated Claimant through August 28, 2017. (*Id.* at 24a.) Dr. Valentino explained, however, that he did not find it "odd" that there was no change in Claimant's symptoms during that

5

time. (*Id.*) Dr. Valentino also admitted that no medical professional, including himself, had noted any atrophy and that the only diagnoses he was relating to Claimant's reported work injury were to the low back and lower extremities. (*Id.* at 24a-25a.) Dr. Valentino affirmed that Claimant never reported any neck pain to him. (*Id.* at 25a.)

In opposition to Claimant's claim petition, Employer presented the deposition testimony of David T. Yucha, M.D., who is board certified in orthopedic surgery.[3] (R.R. at 57a.) Dr. Yucha conducted an independent medical examination (IME) of Claimant on October 5, 2017, which included reviewing Claimant's medical records, taking a history from Claimant, and performing a physical examination. (*Id.* at 57a-59a.) Dr. Yucha explained that Claimant reported that, on May 1, 2017, he "was working as a steamfitter and was lifting a tool out of a gang box and felt a, quote, pinch, unquote in his lower back." (*Id.* at 58a.) Claimant also reported pain going down his left leg, some pain in his neck, and "low back pain with transient numbness in the left leg" at certain points in time. (*Id.* at 58a-59a.) Dr. Yucha explained that Claimant worked following the injury, but he reported that he could not get out of bed a few days later and has not been able to work in any capacity since that time. (*Id.* at 58a.)

Dr. Yucha indicated that the MRI of Claimant's lumbar spine "showed a mild degeneration of the L5-S1 disc with a small central herniation encroaching on the left S1 nerve root with mild central canal stenosis." (R.R. at 58a.) Dr. Yucha further indicated that, at the time of his IME, Claimant was receiving physical therapy a

---

[3] Employer also presented the testimony of Andrew Conley, a general foreman of the pipefitters and instrumentation technicians for Employer, and Leon Crawford, III, an instrument technician for Employer and shop steward for the Steamfitters union. (C.R., Item No. 20, at 4, 15.)

6

couple of days a week. (*Id.*) Dr. Yucha explained that the notes from those physical therapy sessions, particularly on August 14, 2017, revealed that Claimant's "strength was good"—*i.e.*, "[h]e had five[-]out[-]of[-]five strength, which is normal strength, in both lower extremities"—and he had "normal sensation in his bilateral lower extremities." (*Id.*)

With respect to his physical examination of Claimant, Dr. Yucha noted that Claimant had a "mildly compensated gait," as well as what Dr. Yucha described as a "magnified symptom" in the form of an "exquisite" and "unexpected" amount of pain "out of proportion to the amount of pressure applied" upon very slight palpation of his lumbar spine. (R.R. at 59a.) Dr. Yucha further explained that testing on Claimant's lower back resulted in pain with "no organic etiology" and that, when he "did the manual muscle testing[, Claimant] had four[-]out[-]of[-]five strength or a little bit of limited strength in the lower extremity musculature," which was in contrast to the normal strength findings in the August 2017 physical therapy notes. (*Id.*) Dr. Yucha explained that continued testing of Claimant's lumbar spine revealed that Claimant's sensory nerves were intact bilaterally and that Claimant experienced "excruciating discomfort" in "flexion, extension, side-to-side bending, and side-to-side twisting" in range of motion testing. (*Id.*) Dr. Yucha stated that he performed straight-leg testing to "examine for disc pathology that[ is] encroaching on a nerve root, and [Claimant's] examination was negative." (*Id.*) Further, Claimant's "reflexes were negative, and his quad girth or quad strength was equal and symmetric bilaterally. . . . [Claimant] had no . . . long tract signs or nervous system signs with testing for the Babinski maneuver and looking for clonus with physical examination of the lower extremity." (*Id.*) Based upon the results of his IME, Dr. Yucha opined within a reasonable degree of medical certainty that

Claimant had suffered a "strain and sprain to the neck and the lumbar spine" on May 1, 2017, while working for Employer, and that Claimant "has completely recovered and is fit for return to work full-time, full duty without any subsequent care related to the injuries reported" on May 1, 2017. (*Id.*) Dr. Yucha reiterated that, in his opinion, Claimant requires no further treatment and is fit for return to work in his pre-injury position full-time, full duty. (*Id.* at 60a.)

On cross-examination, Dr. Yucha confirmed that the only medical records he had to review at the time of his IME were those listed in his notes, and that the last record that he reviewed pertaining to Claimant's condition was dated August 28, 2017. (R.R. at 60a-61a.) Dr. Yucha admitted that it was fair to say that he had "no idea" what Claimant's condition was at the time of the deposition and that he only saw Claimant on one occasion. (*Id.* at 61a.) Dr. Yucha also stated that Claimant had not mentioned any prior back injuries and that Claimant's medical records did not contain "notations of positive Waddell's signs or any symptom magnification." (*Id.*) Dr. Yucha explained that he did not believe there was any "organic etiology or imaging studies to reflect that [Claimant] should have ongoing symptoms." (*Id.*) Dr. Yucha further admitted that, while he had the MRI report, he did not see the MRI films, explaining that "we typically rely on radiologists' expert opinions . . . to help formulate our diagnosis and management plan." (*Id.*) Dr. Yucha confirmed that the MRI report indicated "that at the L5-S1 level there[ is] a small central disc herniation which is impinging upon the thecal sac and left S1 nerve root," and that Claimant's "subjective complaints are left-sided relative to the leg." (*Id.* at 61a-62a.)

Dr. Yucha explained that he has seen disc herniation in 33-year-old individuals and admitted that it was possible that some type of trauma could have

8

caused the disc herniation. (R.R. at 62a.) When asked if it was also possible that some type of trauma could have aggravated or exacerbated an asymptomatic condition such as a disc herniation to where it was symptomatic, Dr. Yucha responded affirmatively but added that "there are many people walking around with asymptomatic disc herniations especially in the absence of any finding on physical examination such as a straight-leg raise, weakness, or decrease in sensation that would support that disc being symptomatic." (*Id.*) Dr. Yucha also stated that weakness "could be" evidence of a nerve irritation, with the same being the case for "the straight-leg test and decrease in sensation." (*Id.*)

By decision and order circulated on May 11, 2018, the WCJ granted Claimant's claim petition for a closed period. In so doing, the WCJ credited Claimant's testimony "with respect to the occurrence of the alleged work injury on the basis of . . . Claimant's demeanor during his testimony before the [WCJ]" and found that Claimant's testimony established that "Claimant bent over for the retrieval of a saw from a gang box and felt pain in the left side of his lower back on . . . May 1, 2017." (WCJ's Decision, May 11, 2018, at 3-4.) The WCJ also made the following relevant findings with respect to the testimony of Dr. Valentino and Dr. Yucha:

> 3. . . . .
>
> Drs. Valentino and Yucha are credible to extents. Dr. Valentino is credible about . . . Claimant's experience of a lumbar strain and lumbar disc herniation with radiculopathy as [a] result[] of the work injury on the bases of his familiarity with . . . Claimant's condition as . . . Claimant's treating orthopedic surgeon, of his evaluations of . . . Claimant at a more proximal time to . . . Claimant's work injury than Dr. Yucha's evaluation of . . . Claimant, of the findings on Claimant's [MRI] test on a date near . . . Claimant's work injury, of the clinical findings during Dr. Valentino's examination of . . . Claimant and in support of . . . Claimant's radiculopathy, and of . . . Claimant's complaints in support of Dr. Valentino's diagnoses of lumbar strain,

9

herniation, and radiculopathy. Dr. Valentino is more credible than Dr. Yucha with respect to . . . Claimant's herniation as a result of the work injury because the objective findings on the MRI of . . . Claimant substantiate Dr. Valentino's diagnosis of a herniation and because Dr. Yucha's testimony didn't refute Dr. Valentino's testimony about the occurrence of the disc herniation from the alleged work injury and didn't establish any reason, inclusive of the alleged work injury and/or other condition or degeneration, for the existence of the disc herniation.

. . . .

Dr. Yucha is credible with respect to Dr. Yucha's diagnosis of lumbar sprain as a result of . . . Claimant's work injury because Dr. Yucha, as a board[-]certified orthopedic surgeon has an expertise for the diagnosis of alleged orthopedic injuries as those of . . . Claimant. Dr. Yucha is more credible and persuasive than Dr. Valentino about . . . Claimant's recovery from the work injury by October 5, 2017[,] because Dr. Valentino didn't evaluate . . . Claimant's condition on or about the time of Dr. Yucha's evaluation, because statements in the reviewed medical records by Dr. Yucha established a plethora of normal findings by other medical practitioners near the time of Dr. Valentino's last evaluation of . . . Claimant and in support of a recovery, and because the results of Dr. Yucha's evaluation of . . . Claimant supported Dr. Yucha's opinions.

. . . .

15.   . . . Although Dr. Valentino testified that . . . Claimant lifted a tool from a gang box and felt pain in the low back on May 1, 2017[,] and that . . . Claimant's lifting activity with a large or heavy object was consistent with . . . Claimant's injury, Dr. Valentino's testimony about the occurrence of the alleged work injury contrasted with . . . Claimant's testimony about the occurrence of the alleged work injury and . . . Claimant bent over and reached into a box for the retrieval of a saw, as opposed to his performance of any actual lifting activity, and felt pain, in accordance with . . . Claimant's testimony.

16.   Regarding diagnostic test results, Dr. Valentino's testimony established that a[n] MRI of . . . Claimant's lumbar spine on May 22, 2017[,] showed a paracentral disc herniation at the levels of L5-S1, specifically completely compatible findings with . . . Claimant's symptoms and mechanism of . . . Claimant's alleged work injury in Dr. Valentino's opinion, and some early age-related degenerative changes.

. . . .

10

24. Dr. Yucha's testimony established that the report of the MRI is indicative of a small central disc herniation with an impingement upon the thecal sac and the left sided nerve root at the level of S1. Although Dr. Yucha testified as aforesaid, Dr. Yucha's testimony didn't refute Dr. Valentino's testimony about the occurrence of the disc herniation from the alleged work injury and didn't establish any reason, inclusive of the alleged work injury and/or other condition or degeneration, for the existence of the disc herniation.[4]

(*Id.* at 3-4, 6, 8.) Based on her findings of fact and credibility determinations, the WCJ concluded that Claimant met his burden of establishing his entitlement to workers' compensation benefits for the May 1, 2017 work-related injury, and that Employer was thus liable to Claimant for the payment of benefits and related expenses for the period beginning May 4, 2017, through the date of Claimant's full recovery on October 5, 2017. (*Id.* at 9.)

Both Claimant and Employer appealed the WCJ's decision to the Board. Relevant to the appeal presently before this Court, Claimant challenged the WCJ's decision on the grounds that it was neither supported by substantial evidence nor well-reasoned. Claimant essentially contended that, while the WCJ credited Dr. Valentino over Dr. Yucha in diagnosing Claimant with a lumbar strain and disc herniation with radiculopathy as a result of the May 1, 2017 work-related injury, which injury was disabling as of May 4, 2017, the WCJ credited Dr. Yucha over Dr. Valentino in finding that Claimant had fully recovered from the May 1, 2017 work-related injury as of October 5, 2017, even though Dr. Yucha did not include a disc herniation and radiculopathy within those diagnoses and did not testify that

_____

[4] The WCJ did not find Dr. Valentino credible with respect to his diagnoses of facet syndrome or aggravation thereof as a result of the May 1, 2017 work-related incident, and the WCJ found Dr. Valentino more credible in repudiation of Dr. Yucha's diagnoses as they related to any neck sprain or strain. (WCJ's Decision, May 11, 2018, at 3-4, 7-8.) These determinations are not at issue in this appeal.

11

Claimant had recovered from those diagnoses. Claimant, thus, contended that the termination of his benefits as of October 5, 2017, was improper.

On May 24, 2019, the Board issued a decision remanding the matter to the WCJ for further proceedings on Claimant's claim petition, agreeing that the WCJ had made findings that appeared to be internally inconsistent. (Board's Decision, May 24, 2019, at 5.) The Board observed that, while the WCJ credited Dr. Valentino's opinion that Claimant sustained a work-related lumbar disc herniation with radiculopathy, the WCJ also credited Dr. Yucha's opinion that Claimant had fully recovered from the May 1, 2017 work-related injury. (*Id.* at 6.) The Board, however, noted that Dr. Yucha opined only that Claimant sustained a cervical and lumbar strain and sprain. (*Id.*) Concluding that these findings conflicted, and given that the WCJ had credited both experts, the Board reasoned that clarification of the WCJ's decision was necessary. (*Id.*) The Board also noted that Dr. Yucha admitted that Claimant had a disc herniation, but he did not relate the herniation to the work injury, nor did he opine that Claimant had fully recovered from that disc herniation. (*Id.*) The Board observed that the WCJ, however, determined that the disc herniation was related to Claimant's work injury. (*Id.*) The Board, therefore, concluded that there did not appear to be evidence to support the WCJ's determination that Claimant was fully recovered from the entirety of his work-related injury. (*Id.*) Concluding that it was unable to render effective appellate review under the circumstances, the Board remanded the matter to the WCJ "to provide clarification on her findings, including findings as to the exact description of Claimant's work injuries, and whether Claimant had fully recovered from all of the accepted injuries." (*Id.*)

On remand, by decision and order circulated on February 19, 2020, the WCJ clarified her findings of fact, in relevant part, as follows:

14. . . . Claimant is credible with respect to the occurrence of the alleged work injury on the basis of . . . Claimant's demeanor during his testimony before the [WCJ]. . . .

15. Drs. Valentino and Yucha are credible to extents. Dr. Valentino is credible about . . . Claimant's experience of a lumbar strain as a result of the work injury on the bases of his familiarity with . . . Claimant's condition as . . . Claimant's treating orthopedic surgeon, of the clinical findings during Dr. Valentino's examination of . . . Claimant, and of . . . Claimant's complaints in support of Dr. Valentino's diagnosis of lumbar strain. Dr. Valentino isn't credible with respect to . . . Claimant's herniation and radiculopathy as [a] result[] of the work injury because Dr. Valentino testified that . . . Claimant's lifting activity with a large or heavy object was consistent with . . . Claimant's injury, because . . . Claimant testified that . . . Claimant bent over for the retrieval of a tool and felt pain in his lower back as the mechanism of the alleged work injury, and because Dr. Valentino didn't have an accurate history of the mechanism of the alleged work injury when he attributed . . . Claimant's diagnosed conditions to . . . Claimant's lifting activities.

. . . .

18. Dr. Valentino's testimony about the occurrence of the alleged work injury contrasted with . . . Claimant's testimony about the occurrence of the alleged work injury and . . . Claimant bent over and reached into a box for the retrieval of a saw, as opposed to his performance of any actual lifting activity, and felt pain, in accordance with . . . Claimant's testimony.

19. Dr. Yucha is credible with respect to Dr. Yucha's diagnosis of lumbar sprain as a result of . . . Claimant's work injury because Dr. Yucha, as a board[-]certified orthopedic surgeon has an expertise for the diagnosis of alleged orthopedic injuries as those of . . . Claimant and because Dr. Valentino substantiated that diagnosis.

20. Dr. Yucha is credible and persuasive about . . . Claimant's recovery from the work injury by October 5, 2017[,] because Dr. Yucha's clinical findings during his evaluation of . . . Claimant substantiated that and statements in the reviewed medical records by Dr. Yucha were indicative of a plethora of normal findings by other

13

medical practitioners near the time of Dr. Valentino's last evaluation of . . . Claimant and in support of a recovery.

21. Dr. Valentino is credible about . . . Claimant's disability from the work injury on June 20, 2017[,] and August 28, 2017[,] because no evidence refuted that. Dr. Yucha is credible about . . . Claimant's fitness for his full[-]time, full[-]duty, and pre-injury job on October 5, 2017[,] because Dr. Yucha's clinical findings and the plethora of normal findings by other medical practitioners near the time of Dr. Valentino's last evaluation of . . . Claimant supported that.

(WCJ's Decision, February 19, 2020, at 8-10.)

Based on her findings of fact and credibility determinations, the WCJ again concluded that Claimant met his burden of establishing his entitlement to workers' compensation benefits for the May 1, 2017 work-related injury, and that Employer was thus liable to Claimant for the payment of benefits and related expenses for the period beginning June 20, 2017,[5] through October 5, 2017. Claimant again appealed to the Board, arguing, *inter alia*, that the WCJ's decision on remand was not supported by substantial evidence, well-reasoned, or in accordance with the Board's remand order, and that the WCJ improperly reweighed the evidence in a manner that essentially refuted the WCJ's prior decision.

On May 5, 2021, the Board affirmed the WCJ's remand decision and order. The Board first explained that, on remand, the WCJ specifically credited both Dr. Valentino's and Dr. Yucha's opinions that Claimant sustained a work-related lumbar strain. (Board's Decision, May 5, 2021, at 6.) Further, the Board noted that the WCJ accepted Dr. Valentino's uncontradicted opinion that Claimant's lumbar injury resulted in disability but rejected Dr. Valentino's opinion that Claimant sustained additional lumbar injuries consisting of a lumbar herniation with

---

[5] For reasons not apparent to this Court, the WCJ, in her decision on remand, changed the start date of her award of a closed period of benefits from May 4, 2017, the first date on which Claimant was unable to work following the May 1, 2017 work-related injury, to June 20, 2017, the date on which Claimant first treated with Dr. Valentino.

radiculopathy. (*Id.*) The Board explained that the WCJ rejected Dr. Valentino's opinion regarding these additional injuries because Dr. Valentino misunderstood Claimant's mechanism of injury to involve lifting a heavy object, when Claimant testified that his injury occurred when he was reaching for a tool. (*Id.* at 6-7.) The Board also observed that the WCJ accepted Dr. Yucha's testimony that Claimant had fully recovered from his work-related lumbar sprain as of October 5, 2017. (*Id.* at 7.)

Additionally, the Board concluded that the WCJ did not exceed the scope of the Board's remand order by reweighing the record evidence and making additional credibility determinations and factual findings. Noting that it had previously recognized the internally inconsistent findings in the WCJ's original decision and the lack of substantial evidence in support of the WCJ's findings, the Board explained that its order specifically directed the WCJ to "provide clarification on her findings, including findings as to the exact description of Claimant's work injuries, and whether Claimant had fully recovered from all accepted injuries." (Board's Decision, May 5, 2021, at 7-8.) The Board explained that, here, the WCJ properly reviewed the entire record, added to her findings to clarify her determinations on Claimant's accepted work injuries, and rendered a determination as to Claimant's status as fully recovered from the May 1, 2017 work-related injury in satisfaction of the Board's remand order, which required additional findings to resolve the WCJ's previously conflicting findings. (*Id.* at 8.)

The Board also rejected Claimant's argument that the WCJ's finding that Claimant fully recovered from his work injuries was not supported by substantial evidence. The Board noted that, while Claimant argued that Employer had failed to meet its burden to establish full recovery, in a claim petition, it is the claimant who

15

has the burden to show the extent and duration of his work-related disability. (Board's Decision, May 5, 2021, at 9.) Observing that the WCJ may terminate benefits when the credible evidence only supports a limited duration of disability, the Board explained that, here, the WCJ credited Dr. Valentino and Dr. Yucha insofar as they determined that Claimant sustained a lumbar sprain. (*Id.*) The Board further explained that the WCJ also accepted Dr. Yucha's testimony that Claimant was fully recovered from such injury as of October 5, 2017. (*Id.*) The Board concluded that Dr. Yucha's credible opinion that Claimant had no ongoing work-related disability constituted substantial evidence to support the WCJ's termination of benefits. (*Id.*) The Board, thus, discerned no error in the WCJ's decision. This appeal followed.

On appeal,[6] Claimant raises one issue for our consideration in which he challenges the Board's affirmance of the WCJ's decision on the grounds that, in finding that Claimant merely sustained a lumbar strain as a result of the May 1, 2017 work-related incident, the WCJ's decision was based on facts that are contrary to the evidence and was not well-reasoned. Given that Claimant has implicated two theories of error governed by different legal standards—*i.e.*, substantial evidence and reasoned decision—we have separated Claimant's arguments for purposes of discussion.

With regard to whether substantial evidence supports the WCJ's decision, this Court has observed that the WCJ is the ultimate finder of fact in workers' compensation proceedings. *Williams v. Workers' Comp. Appeal Bd.*

---

[6] "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, and whether constitutional rights were violated." *Combine v. Workers' Comp. Appeal Bd. (Nat'l Fuel Gas Distrib. Corp.)*, 954 A.2d 776, 778 n.1 (Pa. Cmwlth. 2008), *appeal denied*, 967 A.2d 961 (Pa. 2009).

16

*(USX Corp.-Fairless Works)*, 862 A.2d 137, 143 (Pa. Cmwlth. 2004). As fact-finder, matters of credibility, conflicting medical evidence, and evidentiary weight are within the WCJ's exclusive province. *Id.* If the WCJ's findings are supported by substantial evidence, they are binding on appeal. *Agresta v. Workers' Comp. Appeal Bd. (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004). We may only reverse a WCJ's findings if they are unsupported by substantial evidence or are arbitrary or capricious. *B & T Trucking v. Workers' Comp. Appeal Bd. (Paull)*, 815 A.2d 1167, 1170 (Pa. Cmwlth. 2003). In making this determination, we may not "reweigh the evidence or the credibility of the witness[es], but [must] simply determine whether the WCJ's findings have the requisite measure of support in the record as a whole." *Elk Mountain Ski Resort, Inc. v. Workers' Comp. Appeal Bd. (Tietz, deceased)*, 114 A.3d 27, 32 n.5 (Pa. Cmwlth. 2015). It is irrelevant whether there is evidence to support contrary findings; the relevant inquiry is whether substantial evidence supports the WCJ's necessary findings. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Before this Court, Claimant takes issue with the following portion of finding of fact 15:

> Dr. Valentino isn't credible with respect to . . . Claimant's herniation and radiculopathy as [a] result[] of the work injury because Dr. Valentino testified that . . . Claimant's *lifting activity with a large or heavy object was consistent with . . . Claimant's injury*, because . . . Claimant testified that . . . Claimant bent over for the *retrieval of a tool and felt pain* in his lower back as the mechanism of the alleged work injury, and because Dr. Valentino didn't have an accurate history of the mechanism of the alleged work injury when he attributed . . . Claimant's diagnosed conditions to . . . Claimant's lifting activities.

(Claimant's Brief at 15 (emphasis in original) (quoting WCJ's Decision, February 19, 2020, at 9).) Claimant argues that the WCJ's findings above are

contrary to the evidence because Dr. Valentino's testimony reveals that he, in fact, correctly understood that Claimant's lifting of a tool and feeling pain in his lower back was the mechanism of the alleged work injury. Claimant notes that Dr. Valentino testified that the work injury "occurred on 5/1/2017 when, while employed as a steamfitter, *[Claimant] lifted a tool* from a gang box and felt pain in the low back." (Claimant's Brief at 16 (emphasis in original) (quoting R.R. at 8a).) Claimant also notes that Dr. Yucha, whom the WCJ deemed to be credible, also testified that Claimant sustained a work injury on May 1, 2017, when he "was *lifting a tool* out of a gang box and felt a, quote, pinch, unquote, in his lower back." (Claimant's Brief at 16 (emphasis in original) (quoting R.R. at 58a).) Claimant further emphasizes that in the WCJ's initial decision issued on May 11, 2018, the WCJ found that Claimant credibly testified that he "bent over for the retrieval of a saw from a gang box and felt pain in the left side of his lower back on . . . May 1, 2017." (Claimant's Brief at 16 (quoting WCJ's Decision, May 11, 2018, at 4).) Claimant submits that even the WCJ's own factual findings reveal that Dr. Valentino had a correct understanding of the mechanism of Claimant's work injury. Claimant, thus, argues that the WCJ's finding that Dr. Valentino was not credible based on the WCJ's assertion that Dr. Valentino misunderstood the mechanism of the work injury is mistaken and contrary to the evidence.

In response, Employer argues that the WCJ's findings are supported by the record. Employer challenges Claimant's position that Dr. Valentino correctly understood the mechanism of injury as having occurred when Claimant lifted a tool from a gang box and felt pain. Employer takes the position that, in fact, Dr. Valentino agreed that the mechanism of injury involved "picking up a *large or [. . . ] heavy* object." (Employer's Brief at 14 (emphasis in original) (quoting R.R. at 17a).)

18

Preliminarily, we note that, in both of her decisions, the WCJ found Claimant to be credible with respect to the occurrence of the alleged work injury based on Claimant's demeanor during his testimony before the WCJ. (WCJ's Decision, May 11, 2018, at 3; WCJ's Decision, February 19, 2020, at 8.) In this regard, the WCJ further found that Claimant testified that, at the time of the work injury, "Claimant bent over for the retrieval of a saw from a gang box and felt pain in the left side of his lower back on . . . May 1, 2017."[7] (WCJ's Decision, May 11, 2018, at 4; WCJ's Decision, February 19, 2020, at 5.) Consistent with the WCJ's findings, Claimant testified that he "bent over to pick a porta band up out of a gang box and [he] felt pain in [his] lower back." (C.R., Item No. 19, at 5.) Claimant specifically emphasized that he was "reaching in . . . to get a saw" out of the gang box, not "lifting the gang box." (*Id.* at 6.) Thus, insofar as there is a dispute regarding the WCJ's finding that the mechanism of injury involved Claimant's bending over as opposed to any lifting activity, we conclude that the WCJ's finding is supported by the evidence of record, and we will not disturb her credibility determinations on appeal.

Additionally, we reject Claimant's position that Dr. Valentino had a correct understanding of the mechanism of Claimant's work-related injury. As noted by Claimant, and contrary to the credited testimony Claimant provided at the hearing before the WCJ, Dr. Valentino testified that the work injury occurred when Claimant "lifted a tool from a gang box and felt pain in the low back." (R.R. at 8a.) Dr. Valentino also responded affirmatively when asked if Claimant's "mechanism of injury, picking up a large or a heavy object, [is] consistent with" Claimant's injury.

---

[7] The WCJ also describes Claimant's mechanism of injury in accordance with Claimant's testimony in other findings, including, pursuant to our reading, in finding of fact 15 itself. (WCJ's Decision, February 19, 2020, at 9, Findings of Fact 15, 18.)

(*Id.* at 17a.)  This testimony, particularly when viewed in the light of the WCJ's supported findings regarding Claimant's actual mechanism of injury, constitutes substantial evidence supporting the WCJ's determination that Dr. Valentino did not have an accurate history of the mechanism of Claimant's injury.  As such, the record further supports the WCJ's finding that Dr. Valentino was not credible in attributing Claimant's herniation and radiculopathy to the work injury because Dr. Valentino had an inaccurate history of the mechanism of the May 1, 2017 work-related injury.[8]  We, therefore, reject Claimant's challenge to finding of fact 15 as contrary to the evidence.

> Next, Claimant challenges finding of fact 20, which provides:

> Dr. Yucha is credible and persuasive about . . . Claimant's recovery from the work injury by October 5, 2017[,] because Dr. Yucha's clinical findings during his evaluation of . . . Claimant substantiated that and statements in the reviewed medical records by Dr. Yucha were indicative of a *plethora of normal findings* by other medical practitioners *near the time of Dr. Valentino's last evaluation* of . . . Claimant and in support of a recovery.

(Claimant's Brief at 17 (emphasis in original) (quoting WCJ's Decision, February 19, 2020, at 9.)  Claimant contends that the WCJ's determination that there was a "plethora of normal findings" regarding Claimant's medical condition around the time that Dr. Valentino last treated Claimant is unsupported by the record.  Observing that Dr. Valentino testified that he last physically examined Claimant on July 25, 2017, Claimant explains that Dr. Valentino noted that Dr. Ivill saw Claimant on August 28, 2017, and recommended that Claimant undergo epidural injections.

---

[8] While Claimant points out that Dr. Yucha also identified the mechanism of Claimant's injury as involving a lifting activity, we note that the WCJ did not base any of her credibility determinations regarding Dr. Yucha's testimony on the accuracy of Dr. Yucha's understanding of the mechanism of injury.

Claimant also relies upon the MRI taken three weeks after the work injury on May 22, 2017, which indicates the presence of a herniation.

In response, Employer argues that the WCJ's use of the phrase "plethora of normal findings" did not constitute a finding as to Claimant's condition around the time Dr. Valentino last treated Claimant. Rather, it was part of the WCJ's reasoning as to why Dr. Yucha's opinion of full recovery was credible. Employer further submits that Dr. Yucha's physical examination, review of medical records, testimony, and IME report contain evidence of "normal findings" supporting his expert opinion that Claimant had fully recovered from his work-related lumbar sprain as of October 5, 2017.

Initially, we agree with Employer that the WCJ's observation regarding the "plethora of normal findings" around Dr. Valentino's last evaluation of Claimant did not constitute a determination or finding as to Claimant's condition at that time and that, instead, it was a part of the WCJ's reasoning as to why Dr. Yucha's opinion of Claimant's full recovery as of October 5, 2017, was credible. Further, a review of the record reveals that there is evidence to support the WCJ's determination that normal findings existed around the time of Dr. Valentino's final examination of Claimant on July 25, 2017. Specifically, Dr. Yucha testified that Claimant's physical therapy notes, particularly those from August 2017, revealed normal strength and sensation findings. (R.R. at 58a-59a.) While Claimant relies upon Dr. Ivill's recommendation that Claimant undergo epidural injections as well as Claimant's MRI results to refute the WCJ's determination that there was a "plethora of normal findings" at the time of Dr. Valentino's last evaluation of Claimant, we disagree that the existence of this contrary evidence renders the WCJ's determination unsupported by substantial evidence. *See Hoffmaster*, 721 A.2d

21

at 1155. We also emphasize that, as fact-finder, the WCJ was entitled to weigh the evidence before her, and we will not reweigh that evidence on appeal. *See Elk Mountain Ski Resort, Inc.*, 114 A.3d at 32 n.5. We, therefore, reject Claimant's challenge in this regard.

Turning to Claimant's argument that the WCJ's decision is not well-reasoned, we observe that Section 422(a) of the Act[9] provides, in pertinent part, that all parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." The decision of a WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). In order to satisfy this standard, a WCJ does not need to discuss every piece of the evidence in the record. *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 194 n.4 (Pa. Cmwlth. 2006), *appeal denied*, 916 A.2d 635 (Pa. 2007). Rather, Section 422(a) of the Act requires WCJs to issue reasoned decisions so that this Court does not have to "imagine" the reasons why a WCJ finds that the testimony of one witness was more credible than the testimony of another witness. *Id*. at 196. Thus, "[w]hen faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence." Section 422(a) of the Act.

Additionally, under Section 422(a) of the Act, a WCJ must articulate the objective rationale underlying her credibility determinations where there is conflicting witness testimony. A WCJ may satisfy the reasoned decision

---

[9] 77 P.S. § 834.

22

requirement if she summarizes the witnesses' testimony "and adequately explain[s] [her] credibility determinations." *Clear Channel Broad. v. Workers' Comp. Appeal Bd. (Perry)*, 938 A.2d 1150, 1157 (Pa. Cmwlth. 2007), *appeal denied*, 951 A.2d 1167 (Pa. 2008). "Thus, while summaries of testimony alone would be insufficient to satisfy the reasoned decision requirement, where a WCJ summarizes testimony and also objectively explains [her] credibility determinations, the decision will satisfy the requirement." *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). In addition, a WCJ cannot simply ignore uncontroverted evidence but, rather, must adequately explain the reasons why she has rejected such evidence. Section 422(a) of the Act.

Claimant argues that finding of fact 15 is illogical on its face, as it is unclear whether the WCJ meant that Dr. Valentino's view was inconsistent with the actual mechanism of injury or that Claimant was in actuality not lifting a heavy object but was instead lifting a tool when he felt pain in his lower back on the date of the work-related injury. Employer counters that the WCJ's finding provides adequate reasons explaining why she found Dr. Valentino's testimony not to be credible: (1) because Dr. Valentino testified that Claimant's lifting activity with a large or heavy object was consistent with Claimant's work-related injury; (2) because Claimant credibly testified that he bent over to retrieve a tool and felt pain in his lower back as the mechanism of the alleged work injury; and (3) because Dr. Valentino did not have an accurate history of the mechanism of the alleged work injury when he attributed Claimant's diagnosed conditions to heavy lifting activities. Employer argues that, because the WCJ fully articulated the reasons for her findings based on the substantial credible evidence of record, her decision is reasoned as required by Section 422(a) of the Act.

Insofar as Claimant argues that the WCJ's decision is not reasoned because finding of fact 15 is "illogical," we reject Claimant's contention. While the WCJ's finding is not a model of clarity, our reading of it reveals that the WCJ did not find Dr. Valentino's opinion that Claimant's herniation and radiculopathy were caused by the May 1, 2017 work-related injury to be credible because Dr. Valentino had an inaccurate history of the mechanism of Claimant's injury, which involved a bending—as opposed to a lifting—activity. Because the WCJ provided an adequate explanation of her credibility determination as to Dr. Valentino's opinions, Claimant is not entitled to relief on this basis.

Claimant also argues that the WCJ offered no explanation for why the MRI evidencing a disc herniation and impingement supported the finding that Claimant only sustained a lumbar strain during the May 1, 2017 work-related incident. Noting that the WCJ relied upon Claimant's MRI in support of Dr. Valentino's diagnoses of a lumbar strain, a herniation, and radiculopathy in her initial decision, Claimant asserts that the WCJ failed to mention the MRI results at all in her decision on remand. Claimant, thus, faults the WCJ for this "disconnect" between her findings regarding the MRI results in her 2018 and 2020 decisions. (Claimant's Brief at 19.) Employer counters that, while Claimant seems to posit that the WCJ was required to mention the MRI in her findings and explain why the MRI supports a finding of a lumbar sprain, the WCJ considered that both Dr. Yucha and Dr. Valentino reviewed the MRI, which was one of a number of factors that each expert considered in rendering opinions as to causation. Employer also claims that the WCJ articulated verifiable reasons for her credibility determinations and that it is incumbent upon this Court to view the WCJ's reasoning as a whole and not dissect and analyze each of the WCJ's reasons for her credibility determinations.

Upon review, we conclude that Claimant is not entitled to relief based upon his argument concerning the WCJ's treatment of the MRI. First, the WCJ is not required to address every piece of evidence in the record. *See Dorsey*, 893 A.2d at 194 n.4. Thus, insofar as the WCJ specifically addressed the MRI results in her 2018 decision but did not do so in her 2020 decision, we discern no error. Moreover, as discussed by the WCJ, both Dr. Valentino and Dr. Yucha considered the MRI, among other things, in rendering their opinions as to causation as well as Claimant's diagnoses and recovery in connection with the May 1, 2017 work-related incident. (WCJ's Decision, February 19, 2020, at 6-8.) The WCJ made extensive findings and provided thorough reasoning with respect to each expert's credibility on such matters. (*See id.* at 9-10.) The WCJ specifically found Dr. Valentino to be not credible with respect to his opinion—premised in part on the MRI—that Claimant's herniation and radiculopathy were caused by the work incident because Dr. Valentino did not have an accurate history of the mechanism of Claimant's injury. (*Id.* at 9.) Concluding that the WCJ's decision is reasoned in this regard, we reject Claimant's argument.

In sum, the WCJ reconciled the conflicting findings in her 2018 decision as they related to the exact description of Claimant's work injuries and whether Claimant had fully recovered from all of the accepted injuries, as required by the Board's remand order. While the WCJ may not have done so in a manner more favorable to Claimant, we conclude that Claimant is not entitled to relief on appeal. Accordingly, we affirm the Board's order.

P. KEVIN BROBSON, President Judge

25

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Knowlton, :
                  Petitioner :
                    :
                    :
        v. : No. 618 C.D. 2021
                    :
Flemingtown Instrument Co. Inc. :
(Workers' Compensation Appeal :
Board), :
            Respondent :

# **O R D E R**

AND NOW, this 29th day of December, 2021, the order of the Workers' Compensation Appeal Board, dated May 5, 2021, is hereby AFFIRMED.

 

 

P. KEVIN BROBSON, President Judge